United States Court of Appeals,

Eleventh Circuit.

No. 95-4808

Non-Argument Calendar.

Loretta MORISKY, Plaintiff-Appellant,

v.

BROWARD COUNTY, a political subdivision of the State of Florida,
Defendant-Appellee.

April 11, 1996.

Appeal from the United States District Court for the Southern
District of Florida. (No. 94-6294-CIV-WDF), Wilkie D. Ferguson,
Jr., Judge.

Before TJOFLAT, Chief Judge, and DUBINA and BLACK, Circuit Judges.

PER CURIAM:

We affirm the judgment of the district court for the reasons
stated in the court's dispositive order, attached hereto as an
Appendix.

AFFIRMED.

### APPENDIX

**THIS CAUSE** came before the Court for hearing on December 14,
1994 on Defendant Broward County's Motion for Summary Judgment (DE
# 13). After full consideration of the undisputed facts, memoranda
of law, affidavits, and argument of counsel, it is found as
follows:

### BACKGROUND

On approximately February 15, 1994, Loretta Morisky submitted
a form application for the position of Custodian I with the
Defendant Broward County. The job announcement for the custodial

position provided that a written test was required in the application process. On the face of the form, applicants were advised to notify the staff if testing assistance was needed due to a disability. On the education section of the application, Morisky indicated that she had not received the requisite high school diploma. Her application was considered nonetheless because she indicated that she had completed special education courses.[1]

On the scheduled test date, Morisky arrived at the testing center accompanied by Robert Magaz, a vocational rehabilitation counselor. Magaz informed the test proctor that Morisky was illiterate and was suffering from bronchial asthma. Although Morisky had not previously requested an accommodation, Magaz requested that he, or an employee of Broward County, be allowed to read the test to Morisky. Morisky made a similar request. Both the proctor and her supervisor refused to allow Morisky to have the test read to her based upon their belief that an ability to read was a requirement of the Custodian I position. At no time did Morisky or Magaz inform anyone employed by Broward County that Morisky had a mental or developmental disability. Instead, Morisky elected not to take the test.

On April 6, 1994, Morisky filed the instant complaint against Defendant Broward County, alleging violations of the Americans with

---

[1]Broward County had previously accommodated Morisky when she applied for a security guard position. The test proctor allowed someone to read Morisky the test after she indicated that she was illiterate. This was allowed based on the proctor's belief that the ability to read was not an essential requirement for the security guard position. Here, because the plaintiff failed to establish a prima facie case, the question of whether reading is an essential requirement of the Custodian I position remains undetermined.

Disabilities Act. Specifically, the plaintiff alleges that the defendant failed to provide a reasonable accommodation for her disability when it refused to allow her to take an oral examination in lieu of a written test for the position of Custodian I. Defendant Broward County argues that plaintiff has failed to establish a prima facie case under the ADA.

STANDARD ON MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate:

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Additionally, the *Celotex* Court stated that: "Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file,' designate "specific facts showing there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. The standard for summary judgment is the same as that for a directed verdict, which "the trial judge must grant if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

APPENDIX—Continued

L.Ed.2d 202 (1986) (*citing Brady v. Southern R. Co.,* 320 U.S. 476, 479-80, 64 S.Ct. 232, 234-35, 88 L.Ed. 239 (1943)).

ANALYSIS

The Americans With Disabilities Act provides that no covered

employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). Indeed, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *See Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir.1994).

In support of its motion for summary judgment, Broward County contends that plaintiff has failed to show that she was discriminated against "because of" her disability. Specifically, Broward argues that Morisky has not demonstrated that it had knowledge of her disability, an essential element of her prima facie case. In response, Morisky argues that her statements at the testing site were sufficient to put Broward County on notice of her disability. Because Broward County concedes, for summary judgment purposes, that plaintiff is disabled under the Act, the issue the Court must address is narrow: Will knowledge that an applicant for employment has a disability be imputed to a prospective employer from knowledge that the applicant has taken special education courses and cannot read or write.

*Pridemore v. Rural Legal Aid Society of West Central, Ohio,* 625 F.Supp. 1180 (S.D.Ohio 1985) is instructive. Pridemore, a

lawyer admittedly suffering from "mild" effects of cerebral palsy, applied for a staff attorney position with the defendant legal services agency. After an initial interview he submitted a seven-page letter to members of the defendant's interview committee as a supplement to the application. In the letter he did not specifically mention his cerebral palsy disability. In fact, he testified that a lay person would not detect the presence of the condition based on only his outward speech and demeanor. Instead, he relied on the written document as evidence from which the agency should have been aware that he was disabled. The first statement allegedly alerting the agency provided: "I was born, after a difficult delivery, with minuscule brain damage to the perceptual and sensory-motor areas of the brain in 1952." The second of those statements admonished: "Whatever your decision here today, I hope you do not turn me down in violation of the Rehabilitation Act of 1973."

Pridemore was not offered the position. He brought an action against his prospective employer alleging that he was denied employment solely on the basis of his cerebral palsy condition. On defendant's motion for summary judgment, the court concluded: "[I] cannot agree that these statements in Plaintiff's letter raise a genuine issue as to Defendant's knowledge of Plaintiff's cerebral palsy." Specifically, the court found that the second statement, which alluded to the Rehabilitation Act, was devoid of any substantive content. *Id.* at 1184.

The same logic applies here. Morisky concedes that neither she nor Magaz, her vocational counselor, informed any of the

employees of Broward County of her specific disability. Instead, she relies upon the information furnished, that she could not read and had taken special education courses, as sufficient to put Broward County on notice of her developmental disorder. While illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment. *Jones v. Bowen,* 660 F.Supp. 1115, 1121 (C.D.Ill.1987). Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.

Other courts have rejected the contention that a plaintiff can sustain a prima facie case of handicap discrimination without proof that an employer had actual or constructive knowledge of an applicant's disability. *See Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928 (7th Cir.1995). Hedberg worked for Indiana Bell Telephone Company for over thirty years, serving as a distributor manager for approximately seven years. He was chosen for discharge, along with others, during a period of restructuring. Prior to being told of his termination, however, Hedberg was informed by the company's physician that he suffered from primary amyloidosis, an often fatal illness.

After appealing his discharge, Hedberg sued the phone company, claiming that the company fired him because he had primary amyloidosis, which both parties agreed constituted a "disability" as the ADA defines the term. In granting the phone company's motion for summary judgment, the district court found that "Hedberg [could not] succeed on his ADA claim if the decision to terminate

[him] was reached without knowledge that [he] had a disability."

On appeal, the Seventh Circuit affirmed, touching on the relevant issue in this case:

> [A]n employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability.... At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "*because of* " a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "*because of* " some other reason. (emphasis added).

*Id.* at 932. *See O'Keefe v. Niagara Mohawk Power Corp.,* 714 F.Supp. 622 (N.D.N.Y.1989) (employer did not violate New York law

APPENDIX—Continued

when it discharged plaintiff prior to becoming aware of his alcohol problem); *Landefeld v. Marion General Hospital,* 994 F.2d 1178 (6th Cir.1993) (Internists could not prove hospital suspended him because of his mental illness absent evidence that it knew of that illness). There is no evidence in this case that the defendant knew that the plaintiff's inability to read was a result of an organic dysfunction rather than a lack of education.

## CONCLUSION

Based upon the foregoing, it is

ORDERED AND ADJUDGED that the Defendant Broward County's Motion for Summary Judgment is GRANTED.