Patricia M. COOK and James A. Cook,
her husband, Plaintiffs,

v.

ROBERT G. WATERS, INC., Defendant.

No. 96–1459–CIV–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1997.

C. Kenneth Stuart, Jr., W. James Kelly, P.A., Lakeland, FL, for Plaintiffs.

Gregory David Jones, Jill Deziel Emerson, Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, FL, for Defendant.

## ORDER

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Dkt.21), and Plaintiffs' response (Dkt.24).

### *STANDARD OF REVIEW*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must state the basis for its motion and must identify the portions of the record that show the absence of a genuine issue of material fact. The burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the moving party meets his burden, the nonmoving party must go beyond the pleadings and designate specific facts in his affidavits, or in the depositions, answers to interrogatories, and admissions, that show a genuine issue of material fact. *See Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1532 (N.D.Ala.1995), *citing Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the nonmoving party."

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those that would affect the outcome of the trial. *See id.* at 248, 106 S.Ct. at 2510. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *See Sweat v. The Miller Brewing Co.*, 708 F.2d 655, 657–58 (11th Cir.1983), *quoting Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *See Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981).

In the case at bar, the Court's inquiry focuses on whether there is sufficient evidence of sexual harassment to support a claim under Title VII of the 1964 Civil Rights Act, and whether there is sufficient evidence of disability discrimination to support a claim under Title I of the Americans with Disabilities Act.

### *Factual Allegations*

Plaintiff and Defendant present many factual allegations, supplemented in the record by substantial testimony and other evidence. A brief summary of the factual allegations follows.

Plaintiff, Patricia Cook, began working for Defendant, RGW, as a full–time cashier in January 1993. Her main work area was the cashier's desk, and her immediate supervisor was David DeWitte. A couple of months after full–time employment, Plaintiff testified that she was harassed by various co–workers. Plaintiff stated the harassment began in November or December of 1993. On July 11, 1994, Plaintiff was discharged from employment when her supervisor, David DeWitte stated she would have to leave because

she refused to work with her new supervisor, Rita Scheffey.

Plaintiff specifically identified a few occasions in her complaint in which she claims she was harassed, and testified generally to others. Plaintiff alleges a number of incidents including:

—Bill Fox, a salesman, repeatedly referred to Plaintiff's "nice legs and butt." He also remarked that small breasts are better than large breasts, and he would put his arm around the Plaintiff's shoulders and back every chance that he could.

—Bob McMahon, a salesman, consistently asked Plaintiff to accompany him to nude beaches.

—Jim Schreck, a service advisor, often made comments such as "Please walk in front of me so I can watch your butt."

—Richard Evans, a service technician, remarked to Plaintiff, "I hear you do your best work on your knees."

—David DeWitte, the service manager and Plaintiff's immediate supervisor participated in creating a hostile environment by his comments, such as his statement that he was going to send Plaintiff to a suspected gay customer's house to "convert him." He also remarked to Plaintiff that "we shouldn't be allowed to hire women and old men." In addition to these comments, Plaintiff alleges David DeWitte failed to adequately assist Plaintiff in performing the duties of her job. One example of this failure is that Plaintiff was unable to attend service department meetings because of her gender.

—Plaintiff advised her supervisor, David DeWitte, that she found the comments offensive. David DeWitte was the appropriate person for Plaintiff to notify under RGW's sexual harassment policy. However, David DeWitte ignored Plaintiff's request for remedial action. Plaintiff further advised David DeWitte that customers had heard her co-workers' comments, and had begun making similar comments. After numerous complaints to Plaintiff's supervisor, David DeWitte, the harassment continued.

—Finally, on many occasions, Plaintiff had to physically remove herself from her work station to get away from co-workers, and stop the harassment.

As to the ADA claim, in May, 1994, Plaintiff was diagnosed with a brain tumor which caused severe headaches. From May, 1994, until her termination on July 11, 1994, Plaintiff alleges she was substantially impaired in her ability to work because the headaches required numerous medications which affected her ability to concentrate, her ability to complete her work, and her personality. Plaintiff asserts that Defendant knew Plaintiff's medical impairment constituted a physical impairment and disability. Plaintiff further asserts she attempted to make up lost time from doctors appointments after her normal hours of work, however, acting through David DeWitte, RGW refused to accommodate Plaintiff, or even discuss reasonable accommodation.

On July 11, 1994, David DeWitte notified Plaintiff that Rita Scheffey would be her new supervisor. Plaintiff was then asked whether she had a problem with her new supervisor to which Plaintiff allegedly responded, "No, as long as Rita can separate personal from professional." (Cook 226). Later that afternoon, David DeWitte told Plaintiff, "I really hate to do this but I'm going to have to let you go . . . because if you can't work with Rita . . . I don't have a choice, because she has seniority." (Cook 230).

Plaintiff argues she was denied reasonable accommodation by her employer, and was fired because of her disability resulting from her brain tumor. Defendant asserts that Plaintiff never informed her employer, RGW, that she was in any way limited due to her medical condition. There is no record in Plaintiff's personnel file establishing she was unable to perform any of the functions of her job, nor any indication that there was any change in her performance of her job. Defendant further argues Plaintiff never requested reasonable accommodation from RGW. (Affidavit of Tart, Appendix–4).

Since Plaintiff's termination of employment, she underwent a successful surgery in April 1995, and as of January 1997, Plaintiff is no longer on medication nor being treated by doctors.

## DISCUSSION

Defendant, Robert G. Waters, Inc. seeks summary judgment as to Counts I–II, which include claims under Title VII of the Civil Rights Act of 1964, and under Title I of the Americans with Disabilities Act.

### Title VII

Defendant, Robert G. Waters, Inc. is an employer within the meaning of Title VII of the Civil Rights Act of 1964. At the relevant time, Plaintiff was an employee. Defendant asserts that Plaintiff cannot establish a prima facie case of hostile environment harassment under Title VII of the 1964 Civil Right Act. Plaintiff asserts that the conduct complained of is sufficiently severe and pervasive to set forth a prima facie case under Title VII, especially in light of the fact the Court must weight the evidence in the light most favorable to Plaintiff.

Sexual harassment violates Title VII's proscription of discrimination based on sex. *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989). Sexual harassment can occur as quid pro quo harassment, in which an employer or agent conditions changes in employment terms on demands for sexual favors. *See id.* It can also occur as hostile work environment harassment, which occurs when the employer or agent's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Hostile work environment harassment under Title VII requires the plaintiff show: (1) she is a member of a protected class; (2) she underwent unwelcome sexual harassment; (3) the harassment was based on her gender; (4) the harassment impacted a term, condition, or privilege of the job; and (5) her employer knew or should have known about the harassment and didn't do anything. *See Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir.1988).

The Supreme Court in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), announced the criteria for determining whether a work environment is sufficiently hostile or abusive to invoke relief under Title VII. The Supreme Court was concerned whether Title VII required the victim to demonstrate the harassing conduct was severe enough to cause psychological injury. In resolving the issue, the Supreme Court pointed out Title VII proscribes conduct creating an environment reasonably perceived as hostile or abusive even without having a psychological injury. *See id.*

*Harris* also requires courts to look at the totality of the circumstances in determining whether an environment is hostile or abusive, which may include the frequency and severity of discriminatory conduct, whether the conducts physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 19, 114 S.Ct. at 369.

As the *Harris* court recognizes, "no single factor is required," and thus the frequency of the conduct may be just as important of an aggravating factor as the severity of the harassment. Conduct repeated frequently, although not necessarily severe, has an increased likelihood of violating Title VII. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 n. 4 (9th Cir.1994).

With these principles in mind, the Court turns to the facts of the case. Plaintiff alleges she was repeatedly subjected to humiliating remarks regarding her anatomy and sexuality which were generated solely because she was a woman. The aforementioned comments were frequent and on–going. The comments interfered with Plaintiff's well–being at work. Plaintiff does explicitly allege hostile work environment harassment. Plaintiff is a member of a protected class, and she perceived harassment and did not welcome it. In addition, Plaintiff repeatedly addressed her concerns about the harassment to her immediate supervisor, in accordance with RGW's procedural policy to seek to put an end to the harassment, and asserts nothing was done to remedy the situation.

*Harris* bids the Court to examine the frequency and severity of abuse, whether it had a physical aspect, and whether it unreason-

ably interfered with Plaintiff's performance in determining whether Plaintiff has established a hostile environment. *See Harris,* 510 U.S. at 17, 114 S.Ct. at 367. Plaintiff does not, however, specifically point out how the conduct unreasonably interfered with her performance. However, Plaintiff does mention many instances from which the Court can infer the harassing conduct unreasonably interfered with the Plaintiff's performance at work. For example, Plaintiff asserts she was not allowed in service department meetings because of her gender, and Plaintiff only learned of the information provided to the male employees in the meeting though informed conversation, or not at all. Plaintiff alleges that she was unable to take her allocated work breaks because her supervisor would curtail them and order her back to her work station. This was not done to the male employees, and increased the stress and hardship on Plaintiff generated by the sexual harassment. In addition, on many occasions, Plaintiff had to physically remove herself from her work station and the presence of co-employees to stop the harassing conduct.

■ Plaintiff has indicated factual issues that, if proven, would tend to support a finding of hostile environment sexual harassment. While overtly sexual speech and conduct appears somewhat sporadic, the Court finds that Plaintiff has shown enough so that the Court can say a reasonable jury could infer that the totality of circumstances establishes hostile environment sexual harassment. Therefore, Plaintiff has established the existence of genuine issues of material fact, and summary judgment is inappropriate as to hostile environment sexual harassment claims under Title VII.

### *ADA*

The ADA is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment as persons without a disability. The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employ-ees, employee compensation, job training, and other terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(b)(5)(A). Discrimination includes, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *See* 42 U.S.C. § 12112(b)(5)(A).

The ADA defines "reasonable accommodation" as, "making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and job restructuring, part–time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." *See* 42 U.S.C. § 12111.

■ In order to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability. *See Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir.1996); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996). In addition, a plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *See Morisky,* 80 F.3d at 448.

■ A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *See* 42 U.S.C. § 12111(8). In the ADA, Congress has defined "disability" as a(1) physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being re-

garded as having such impairment. *See* 42 U.S.C. § 12102(2). An individual is deemed "disabled" for purposes of the ADA if he satisfies any one of these three enumerated definitions. A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA. *See Pritchard,* 92 F.3d at 1132; *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (5th Cir.1996). However, to constitute a disability under the ADA, the impairment must substantially limit one or more of the individual's major life activities. *See id.*

To be considered disabled under the ADA, one must have: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; and (3) be regarded as having such impairment. *See* 42 U.S.C. § 12102(2).

Defendant contends that the evidence adduced fails to show that Plaintiff was a qualified individual with a disability or that Plaintiff was discharged because she was suffering from her alleged disability. As to Defendant's first contention, Plaintiff alleges she was substantially impaired as to her ability to work. Defendant points to the EEOC regulations in regard to whether an impairment substantially limits a major life activity. In this regard, the EEOC has provided that courts should consider the following factors when determining whether an impairment substantially limits a major life activity: (1) the nature an severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact resulting from the impairment. *See* 29 C.F.R. § 1630.2(j)(2).

Plaintiff's only major life activity in which she stated she was substantially limited was the major life activity of working. In regard to the "major life activity of working," the regulations state that "substantially limited" means (i) significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skill and abilities. *See* 29 C.F.R. § 1630.2(j)(3). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *See* 29 C.F.R. 1630.2(j)(3); *Pritchard,* 92 F.3d at 1133. Defendant states that even if Plaintiff's ability to work was affected far more is needed for coverage under § 12102(2)(A). *See, e.g., Ellison v. Software Spectrum Inc.,* 85 F.3d 187 (5th Cir.1996) (holding an employee's breast cancer was an "impairment" under the ADA, however, plaintiff failed to prove this impairment substantially limited the major life activity of work in order to establish an ADA claim).

As to Defendant's second contention, Defendant argues that Plaintiff failed to show her termination was based on anything other than the fact that she could not work with her newly appointed supervisor. Defendant further states that regardless whether the employee was disabled under the ADA, the employer may discharge an at-will employee because she was unable to work with her supervisor.

█   In addition, to prove discrimination under the ADA, the employee must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *See Morisky,* 80 F.3d 445 (11th Cir.1996). Defendant argues that Plaintiff failed to identify any limitations or request any type of reasonable accommodations. It is incumbent upon an ADA plaintiff to assert not only a disability, but also any limitation arising therefrom. Further, an ADA plaintiff, as part of her burden of production, must identify an accommodation that would allow her to perform her job duties and establish that such accommodation is reasonable. *See Willis v. Conopco, Inc.,* 108 F.3d 282 (11th Cir. 1997). An employer is obligated to make a reasonable accommodation to the known physical or mental limitations resulting from the disability of a qualified individual with a disability, and an employer does not have to accommodate those disabilities of which he is unaware. *See* 29 C.F.R. § 1630.2; 29 C.F.R. pt. 1630, App., 56 Fed.Reg. 35726, 25747 (July 26, 1991). Defendant further argues that since Defendant lacked the knowledge to discriminate against Plaintiff in light of the fact Plaintiff failed to identify limitations or

request reasonable accommodations, summary judgment should be granted as a matter of law.

Plaintiff counters, asserting that she can state a claim against Defendant without first having to show she requested accommodation from Defendant. Plaintiff cites an Eighth Circuit case in support of her argument. In *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995), the court said a plaintiff must merely demonstrate (1) a disability within the terms of the ADA; (2) the ability to perform the essential functions of her job; and (3) termination under circumstances which raise inferences the disability was a basis for that termination. · Plaintiff alleges she has met the aforementioned elements and summary judgement should be precluded.

However, the law in the Eleventh Circuit is not the same as the Eighth Circuit, on which Plaintiff relies. In the Eleventh Circuit, an ADA plaintiff must show that: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability. *See Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir.1996). Based on the law in the Eleventh Circuit, Plaintiff has failed to meet the elements necessary to establish a prima facie case of ADA discrimination.

Plaintiff further asserts that she has sufficiently disputed Defendant's reason for terminating Plaintiff. Plaintiff supports this argument by pointing the Court to her unequivocal denial that she never refused to work with her new supervisor. While Plaintiff is required to present some affirmative evidence that the disability was a factor in her termination, the burden is "not onerous." *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

The evidence demonstrates that, except for during doctor appointments and during Plaintiff's headaches, Plaintiff states that she could fulfill the essential requirements of the job by continuing to perform her job until she was terminated (Cook 230). Hence, Plaintiff failed to establish that she was subject to unlawful discrimination as a result of her disability.

Based on the evidence in the record, the Court finds that reasonable persons in the exercise of impartial judgment could not conclude that Plaintiff had a physical or mental impairment that substantially limited Plaintiff's ability to care for herself or to work. While the side affects of Plaintiff's medication and headaches may qualify as "physical impairments" under the ADA, the Court finds that such impairments did not substantially limit Plaintiff's ability to care for herself, or to work. In addition, the Court finds that reasonable persons could not conclude that Plaintiff was subjected to unlawful discrimination as a result of her disability, specifically that Plaintiff was in any way limited as a result of her disability, or that Plaintiff requested a reasonable accommodation with which her employer failed to comply. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment as to Count I is **denied and** the Motion for Summary Judgment as to Count II is **granted** (Dkt.21).