Iris KLEIN, Plaintiff,

v.

State of FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES SERVICES formerly, Department of Health and Rehabilitative Services, an agency of the State of Florida, Defendant.

No. 97–6581–Civ.

United States District Court, S.D. Florida.

Dec. 31, 1998.

George Ware Cornell, Ft. Lauderdale, FL, for plaintiff.

Carol Ann Field, Ft. Lauderdale, FL, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

FERGUSON, District Judge.

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment [D.E. 19]. The defendant moves for summary judgment on Count II, which alleges discrimination based on disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). This Court also addresses Count I, which claims discrimination based on disability in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"). As the plaintiff argues the point, the question is whether complications of menopause,[1] which temporarily interfere with a woman's ability to satisfactorily perform employment tasks, is a statutory handicap or disability for which an employer must make reasonable accommodations.

### Factual Background

Iris Klein ("Klein") began employment with the State of Florida as a Youth and Family Counselor in 1990. One of the job requirements was that she attend court hearings which were usually scheduled before 9:30 in the morning. Klein contends her employer should have made a reasonable ac-

---

1. Menopause, more popularly, change of life, describes a phase of physical changes experienced by most women between the ages of forty-five and fifty-five. The basis of the retrogression is the gradual cessation of the secretion of certain endocrine glands. The most noticeable aspect is the gradual or abrupt disappearance of menstruation.

The manner in which the changes of menopause take place is subject to tremendous variation among women. With some it occurs quickly and with only minor disturbances. With others, however, the change of life lasts three or four years accompanied with much difficulty. *See* 11 MEDICAL AND HEALTH ENCYCLOPEDIA 1538 (H.S. Stuttman Co. Publishers 1970).

commodation for her handicap or disability which she describes as a physical inability to arrive at work by 8:00 a.m.

Review of Klein's work history, particularly disciplinary actions, evidences a stormy employer-employee relationship.[2] On January 15, 1993, a counselor supervisor filed an eighteen-page memorandum outlining general and specific complaints against Klein by clients. On March 2, 1994, Klein received a written reprimand for failure to follow instructions. She was reprimanded for falsification of records or statements on March 11, 1994. On March 23, 1994, she was advised by memorandum that all employees were to begin work at 8:00 a.m. and must telephone by 8:15 a.m. if unable to appear on time.

On June 7, 1994, Klein was given a written reprimand for failure to follow instructions. Two similar written reprimands were also given to her on July 1, 1994 and August 24, 1994. On September 5, 1994, Klein's immediate supervisor warned her regarding abuse of sick leave and excessive absenteeism. Additional reprimands were given to her on September 27, 1994 and September 29, 1994 for disruptive conduct and insubordination.

On October 12, 1994, Klein wrote her immediate supervisor requesting reasonable accommodation in the form of "Flex Time" in the mornings because of medical conditions of which the supervisor had been made aware. Klein's chiropractic physician confirmed the condition as "a chronic lumbar facetal imbrication" which made it difficult for her to ambulate in the morning hours. On October 24, 1994, the supervisor met with Klein to discuss the request for accommodation, then sent Klein a memo denying the request because it did not "provide a specific time that [Klein] can report to work daily." Klein followed up with a request for a change of hours from 8:00 a.m. to 5:00 p.m., to 9:30 a.m. to 6:30 p.m. The request was approved November 30, 1994, on the condition that Klein attend all training and court hearings if they were scheduled before 9:30 a.m.

By a letter dated December 14, 1994, Klein was suspended for two weeks effective December 16, 1994. The next day, December 15, 1994, her employment was terminated as of December 13, 1994, for failure to follow supervisory instructions.

Klein testified in deposition that most of her symptoms went away after undergoing a delayed hysterectomy surgery. In subsequent pleadings she has attempted, for the purpose of avoiding a summary judgment, to distance herself from the earlier testimony attributing the physical ailments to menopause. However, her testimony is clear and uncontradicted in the record:

> Now, in 1990 this whole menopausal thing began with the symptoms of nausea, unexplained types of nausea, internal bleeding, and inability to sleep, insomnia.

> I had a whole thing with menopause. And the thing with menopause was the sleeping problems began, the nausea problems began, bleeding problems began. And they didn't want to give me a hysterectomy. They were going to try medication to see if I could get well that way.

> And, see, I never had to take [the medications] before the 90's before this came in with the menopause problems.

Ms. Klein's answers regarding the nature and severity of the menopausal discomforts were also succinct:

> Q. [Counsel] Tell me about everything that you claim was a disability that you are alleging in your complaint. What do you consider your disability?

> A. [Klein] Unable to function in the capacity at 8 o'clock. To be able to get up and be in the office at 8 o'clock. I was unable to do it.

> \* ·\* \* \* \* \*

> Q. [Counsel] Now, which job duties could you perform—was there anything that you couldn't perform once you started working after 10 o'clock or whenever you came in?

> A. [Klein] No. No.

> Q. [Counsel] Was there anything that you were limited in doing?

> A. [Klein] No, because I felt fine by that time.

---

2. Klein filed a grievance appeal from five disciplinary actions and was successful in all of them. Her success in those proceedings is without legal significance to the question of whether she was disabled or handicapped.

On the matter of the duration of complications related to the menopause, Klein gave the following post-termination deposition testimony:

Q. [Counsel] You are not having those problems right now, are you?

A. [Klein] Now, most of them have disappeared since I had the hysterectomy.

As a separate disability claim Klein alleges that all times during her employment she suffered a bipolar disorder,[3] pre-existing the menopausal onset, which was another unlawful cause for her termination from employment.

It is clear in the record that Klein informed the employer of her menopausal complications. It is equally clear in the record that she never told the employer of a bipolar disorder.

Q. [Counsel] Now, with respect to the bipolar disorder did you discuss that with anyone in your office.

A. [Klein] No, didn't need to were taking pills for ten years. I was fine.

Q. [Counsel] But you didn't tell anyone you had the bipolar.

A. [Klein] It was never asked. No one ever asked me.

### Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Similarly, a fact is "material" if it might affect the outcome of the suit under the governing substantive law. *See id.*

In considering this motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the defendant[s] should prevail as a matter of law." *Id.* at 251–252, 106 S.Ct. at 2512. The defendant bears the initial burden of showing the absence of a genuine issue as to any material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. In deciding whether this burden has been met the Court must view the evidence and all factual inferences in the light most favorable to Klein. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, summary judgment should be denied." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992).

Once the initial burden is met, Klein must come forward with specific facts showing that there is a genuine issue for trial that precludes summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial. *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Likewise, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512). Failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal and requires the entry of summary judgment. *See Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552.

### Disability Under the ADA and Rehabilitation Act

The Rehabilitation Act of 1973 prohibits employment discrimination against handicapped persons by the federal government, § 791(b), federal contractors, § 793, and recipients of federal grants, § 794. *See*

---

**3.** This condition is not defined by the parties, but, it is generally understood to refer to a mental illness, controllable with medication, which is characterized by conflicting emotions or thoughts.

29 U.S.C. §§ 701–794. The Rehabilitation Act defines the term "handicap" and catalogues a number of conditions qualifying as handicaps. Menopause is not catalogued as a handicap. Under the Rehabilitation Act, nevertheless, a handicapped person's application for employment may be rejected "in order to 'promote the efficiency of the service.'" *See Crewe v. United States Office of Personnel Management, NACI,* 834 F.2d 140, 142 (8th Cir.1987) (citing 5 C.F.R. § 731.201).

Congress enacted the Americans with Disabilities Act (ADA) in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1). In transplanting the term "major life activities" from the Rehabilitation Act, which used it in defining "individual with handicaps," to the ADA, Congress specifically directed retention of the term's original meaning and "at least as much protection as provided by the regulations implementing the Rehabilitation Act." *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998).

Assuming at this point that a complicated menopause may be a disabling under the ADA, or a handicap under the Rehabilitation Act, the claim must be analyzed applying the major life activity test.

The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). These activities are substantially limited when one is

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition,

manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1).

■ Congress has imposed upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. *See* 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case under the ADA, Klein "must show that: 1) she has a disability, 2) she is a qualified individual, and 3) she was discriminated against because of the disability." *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.) (citing 42 U.S.C. § 12132), *amended on reh'g in part,* 102 F.3d 1118 (11th Cir.1996) (amending last paragraph of opinion with no substantive changes), *cert. denied,* —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997).

**Discussion**

■ Klein does not present a *prima facie* case of discrimination because the restrictions or limitations she describes do not qualify as a disability under the Rehabilitation Act or the ADA. For a physical condition to constitute a "disability" under the ADA, the condition must place the "'individual so far outside the norm as to make it impossible or unusually difficult ... to perform work that could be done by most other people.'" *Welsh v. City of Tulsa, Oklahoma,* 977 F.2d 1415, 1418 (10th Cir.1992) (citing *Cook v. State of R.I., Dep't of Mental Health, Retardation & Hosps.,* 783 F.Supp. 1569, 1574 (D.R.I.1992)).

What Klein describes as her disability may be called a morning lethargy, mental or physical, which afflicts and hampers performances not only in the workplace, but in schools and colleges as well. The condition, identified in the science called chronobiology, which studies internal cycles or biological rhythms in all living things, is attributable to a "biological clock" which in human beings controls the periods of sleep, wakefulness, and many other biological activities. *See* 2 THE WORLD BOOK ENCYCLOPEDIA 244 (World Book, Inc.1982). A person with biological rhythms not conforming to a normal 9 a.m. – 5 p.m. work schedule has not yet been recog-

nized as having a disability. That the internal cycle is the result of an identifiable temporary biological change in the human body is not determinative as to whether the condition is a legal disability.

Klein's impairment, an inability to function in the morning, does not limit a major life activity because she is without physical or mental limitations after 9:30 a.m. In effect Ms. Klein's condition is similar to the shift work sleep disorder which the plaintiff claimed as a disability in *Williams v. City of Charlotte, North Carolina,* 899 F.Supp. 1484 (W.D.N.C.1995). In rejecting Williams' claim that she was disabled because the disorder substantially interfered with her ability to work at night, the court quoted from the *Welsh* case that "[w]hile the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice." *Williams,* 899 F.Supp. at 1488.

In *Harris v. H & W Contracting Co.,* 102 F.3d 516 (11th Cir.1996), the court recognized that whether a disease is capable of substantially impairing the life activities of those affected by it may present a genuine issue of material fact. In *Harris* the medical disease, an endocrine disorder affecting the thyroid gland, had a disabling capability. The evidence showed that in December 1992, Ms. Harris, who had suffered a thyroid condition during her sixteen years of employment, experienced a "panic attack," owing to an overdose of her thyroid medication. The overdose was caused by a change in manufacture of the drug. In January 1993 she was hospitalized for eight days in a psychiatric ward. After the dosage was corrected the thyroid condition no longer limited her life activities and she was medically certified as able to return to her normal job duties as a comptroller. It was not disputed that the plaintiff was totally disabled for a time. While she was on sick leave the employer hired a replacement and on February 15, 1993, informed the plaintiff that her employment with the company had come to an end. She brought suit under the Americans with Disabilities Act.

The court rejected the employer's contention that, because the symptoms experienced by the plaintiff were temporary and episodic, it was entitled to a summary judgment. Reference was made to medical treatises which described the effects of hyperthyroidism in extreme cases as fever, marked weakness and muscle-wasting, extreme restlessness with wide emotional swings, confusion, psychosis or even coma. Significantly, the plaintiff in *Harris* showed that she suffered a disease or disorder which was capable of impairing major life activities. The issue was whether she was in fact disabled or whether the employer regarded her as disabled.

■ As a matter of fact Klein's inability to function before a particular hour is not an impairment of a major life activity. A disease or disorder is not a disability unless it is an actual barrier to employment.

■ It is shown conclusively from Klein's testimony that she did not perceive her bipolar disorder as a disability. Furthermore, any "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir. 1996). Where there is no evidence that an employer knew of an employee's medical condition, as is the case here, the employee cannot prove that an employer made its termination decision on the basis of that disability. *See Miller v. Nat'l Casualty Co.,* 61 F.3d 627, 629–30 (8th Cir.1995).

## CONCLUSION

Menopause, generally, is not a handicap or disability. Complications attendant to menopause as described in this case did not cause substantial mental or physical limitations in a major life activity so as to qualify as a disability or a handicap. Because the employer was never informed, or otherwise knew, that Klein had an emotional disorder separate from the menopausal complications, it cannot be proved that the termination decision was based on that disability.

Having found no disability or handicap under the Rehabilitation Act or the ADA, which are essential elements of a *prima facie* case, it is unnecessary to decide whether a reasonable accommodation was available or whether the employer had a legitimate nondiscrimina-

tory reason for terminating Klein's employment. *See Harris v. H & W Contracting Co.*, 102 F.3d at 519.

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [D.E. 19] is hereby **GRANTED.**

**DONE AND ORDERED.**