[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11612
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cv-00945-VEH

BENJAMIN W. PAYNE,

                                        Plaintiff - Appellant,

versus

GOODYEAR TIRE & RUBBER COMPANY (THE),

                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(January 16, 2019)

Before JORDAN, ROSENBAUM and JULIE CARNES, Circuit Judges.

PER CURIAM:

Benjamin Payne, proceeding *pro se*, seeks review and reversal of the district court's order granting summary judgment in favor of Goodyear Tire & Rubber Company on his race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under 42 U.S.C § 1981, and his disability discrimination claim under the Americans with Disabilities Act, 42 U.S.C. § 12112(a).

Mr. Payne asserts that the district court abused its discretion in denying his discovery motions seeking additional documents from Goodyear. Mr. Payne also argues that the district court erred in granting summary judgment because the decision to fire him was race-based and his performance was satisfactory. He contends that Goodyear management discriminated against him on the basis of his Lupus and related kidney issues, which required him to take frequent bathroom breaks.

Goodyear responds that Mr. Payne's job performance was unsatisfactory, and that was the only reason for his termination. It argues that he has produced no evidence of racial discrimination on the part of any member of management, and that no one involved in the decision to terminate Mr. Payne knew of his alleged disability.

For the reasons which follow, we affirm.

2

**I**

Mr. Payne is an African-American veteran who suffers from Lupus.  As a result of his illness, Mr. Payne experienced kidney failure and received a kidney transplant in 2012.

Goodyear hired Mr. Payne on July 13, 2015, on a probationary basis as the Relief Operator on the Z Calendar Machine.  Mr. Payne was medically cleared to work with no restrictions by a physician at the Veterans Administration, as well as by nurses at Goodyear.  Goodyear terminated Mr. Payne on August 31, 2015, within the probationary period, after he received two probationary evaluation forms—one from Jason McWhorter, the area manager, and one from Michael Tucker, the human resources specialist—both of which contained almost all "unacceptable" ratings. Mr. Tucker recommended termination for Mr. Payne, and listed the following reasons for the unacceptable ratings: "failure to wear safety equipment," "reported off personal other 08/14/2015," "heated discussion with DLT—not following instructions, using cell phone in unauthorized area," and "not willing to learn."  Mr. McWhorter's evaluation form listed several issues with Mr. Payne's job performance, namely the inability or lack of willingness to learn, a bad attitude towards his trainers, and disappearing for long periods at a time.

3

**A**

In support of his assertion that he experienced discrimination on the basis of his race, Mr. Payne points to (1) being singled out among the group of other trainee-probationary hires when he was reprimanded for leaving his work area to pick up a pizza for the group; (2) being the only employee in his trainee class reprimanded for not having safety shoes even though one other employee had failed to timely purchase them; (3) being chastised for asking questions during a tour; (4) failing to timely receive credit for a day's work when his time card malfunctioned; (5) having to learn duties which he felt were outside the scope of the Relief Operator position; (6) being reprimanded for having improper safety glasses; (6) Mr. McWhorter's failing to properly notice his day off; and (7) certain incidents involving hourly employees Scott New and Steve Stancil.

Mr. Payne also alleges that he was discriminated against on the basis of his disabilities when Goodyear terminated him, in part, for his recurrent and "excessive" bathroom breaks. He asserts that he was unfairly treated because he was reprimanded for using non-Goodyear-issued eyewear which had a special tint for Lupus-related reasons, and because he took time off to go to the hospital, though the reason he gave for his absences were "personal" rather than medical. Mr. Payne believes the two people who discriminated against him on the basis of his disability

4

were Mr. Stancil and Mr. Tucker, though he conceded he does not know whether Mr. Tucker actually knew of his medical condition.

**B**

The district court's scheduling order, entered November 1, 2016, directed the parties to complete discovery no later than May 24, 2017. Mr. Payne, then proceeding *pro se*, later moved to extend the discovery deadline, and the court granted him an extension through July 24, 2017. In its order, the court warned the parties that no further extensions would be granted.

On July 17, 2017, Mr. Payne filed a "motion to terminate sanctions," in which he argued that Goodyear had withheld valuable evidence. In response, Goodyear moved to quash a subpoena to produce records, and opposed Mr. Payne's motion because it was vague and because company officials had timely and appropriately responded to his document requests. Before the district court ruled on his motion, but after the discovery deadline, Mr. Payne filed a second "motion to terminate sanctions," arguing that Goodyear had withheld valuable evidence which would prove his disability and his knowledge of the position—the latter presumably intended to show that his job performance was satisfactory.

The district court quashed Mr. Payne's subpoena, finding it untimely and procedurally improper under Federal Rule of Civil Procedure 34. The district court also denied without prejudice his July 17 "motion to terminate sanctions" because it

5

was too vaguely worded.  It did, however, grant Mr. Payne an opportunity to file a second motion, explaining that the motion was "denied without prejudice to [his] right to file a new [motion] that more particularly describes his claim of Goodyear's noncompliance with the discovery rules[,]" and ordered him to attach the specific discovery request as to which Goodyear was purportedly withholding information, a copy of Goodyear's corresponding response, and the request to which Mr. Payne claimed Goodyear had not timely responded.  The district court also explicitly directed Mr. Payne to explain why the withheld information was relevant to his claims, and how he was prejudiced by any late response.  The deadline to comply with the order and file a new discovery motion was August 21, 2017.

On August 15, 2017, Mr. Payne filed a one-paragraph "motion to shorten response time to produce documents," attaching numerous discovery requests and responses.  The district court denied his motion for failure to comply with its earlier order.  Subsequently, on August 28, 2017, Mr. Payne filed a motion to compel, which the district court denied as untimely because he had previously failed to comply with the court's earlier order setting the August 21 deadline.

Both parties then moved for summary judgment.  Goodyear argued that Mr. Payne could not make out a *prima facie* case of race discrimination because (1) his poor performance clearly indicated that he was not qualified; (2) he could not identify any other non-African-American employees with similar "unacceptable"

6

ratings who received more favorable treatment; and (3) he was replaced by an African-American employee. Goodyear also argued that Mr. Payne's poor performance provided a legitimate, non-discriminatory reason for firing him, and Mr. Payne could not show that reason was pretextual.

With respect to the disability discrimination claim, Goodyear argued that Mr. Payne had similarly failed to establish a *prima facie* case because there (1) was no evidence Mr. Payne was actually "disabled" under the ADA's definition; (2) he was medically cleared to work with no restrictions; (3) he admitted he was physically able to perform the job; and (4) none of the relevant decision makers knew about his medical condition or regarded him as disabled. Goodyear asserted that Mr. Payne's poor performance was a legitimate, non-discriminatory, and non-pretextual reason for his firing. In connection with its motion, Goodyear filed a 97-point statement of undisputed facts with citations to the record, and several affidavits and deposition transcripts.

## II

"This Court reviews *de novo* a district court's grant of summary judgment, applying the same legal standards that bound the district court, and viewing all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 961 (11th Cir. 1997) (citations omitted). "All reasonable inferences arising from the undisputed facts

should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013). Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We review a district court's discovery rulings for an abuse of discretion. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id.* (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 16(b), the district court must issue a scheduling order that sets the time to complete discovery. *See* Fed. R. Civ. P. 16(b)(3)(A). Although a district court has the authority to grant extensions of time to complete discovery for good cause, it is not obligated to do so. *See Josendis*, 662 F.3d at 1307. And a district court does not abuse its discretion by holding parties to the "clear terms of its scheduling orders." *Id.* (citation omitted).

## III

We first address Mr. Payne's arguments regarding discovery, and then turn to the summary judgment issues.

8

**A**

Mr. Payne argues that the district court, in denying his discovery motions, improperly allowed Goodyear to withhold and destroy important information proving that he was a qualified employee who was well ahead of his training schedule. Construing these arguments as a challenge to the denial of his discovery motions, we decline to reverse on this ground. Mr. Payne was first given an extension of the time to complete discovery when his then-counsel withdrew, from May 24 to July 24. In spite of the district court's warning that no further extensions would be granted, Mr. Payne served a subpoena on Goodyear on the date discovery closed, at 5:10 p.m. Apart from being procedurally improper, the subpoena would have allowed Goodyear thirty days past the discovery deadline to respond. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii) and (34)(b)(2)(A).

As to the timely-filed discovery motion, the district court noted it was vaguely worded and gave Mr. Payne the opportunity to re-file, going so far as to provide explicit instructions on how to cure the motion's deficiencies. Mr. Payne failed to do so. Because the district court has both the authority and the obligation to ensure its scheduling and procedural orders are closely followed, we conclude it was not an abuse of discretion to deny Mr. Payne's motion.

**B**

Under 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In the employment context, § 1981 prohibits race discrimination. *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330–34 (11th Cir. 1998). Title VII similarly "forbids discrimination on the basis of . . . race . . . in a wide range of employment practices, including hiring, discharge, and promotion." *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir. 1994) (citation omitted). We analyze Title VII and § 1981 claims using the same evidentiary requirements and analytical framework. *See Standard*, 161 F.3d at 1330.

A plaintiff may support his § 1981 or Title VII claim through circumstantial evidence that raises a "reasonable inference" that the employer discriminated against the plaintiff. *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Where there is no direct evidence of discrimination, we use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for single-motive claims.

To make out a prima facie case of race discrimination under *McDonnell Douglas*, a plaintiff must show: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do

10

the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). This is not an onerous burden; "it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* (citations omitted). But "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id.* (citation omitted).

Once an employee has established a prima facie case of discrimination, "the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. . . . [If the employer does so,] the employee has to show that the proffered reason is mere pretext." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016) (citations omitted).

The district court correctly ruled that Mr. Payne was unable to establish a prima facie case of discrimination. Mr. Payne could not identify a single similarly-situated comparator; that is, he could not point to a non-African-American probationary employee who received similar "unacceptable" ratings in evaluations and remained in Goodyear's employ. Conversely, Goodyear proffered evidence of two Caucasian employees who received "unacceptable" ratings and were fired. This alone would be sufficient to conclude Mr. Payne has not met his burden, given the absence of other evidence of discrimination. *See Holifield*, 115 F.3d at 1562. But we also note that, of his eight-person probationary employee class, six of the trainees

11

were African-American and all of them successfully completed the training. Mr. Payne, moreover, was eventually replaced by an African-American candidate.

The incidents that Mr. Payne argues are evidence of race discrimination were either based on conjecture or were unrelated to management's decision to fire him. For example, he argues that he was singled out during orientation after picking up pizza from the gate; however, this incident was unrelated to his ultimate termination. The same is true of the incident involving his failure to timely purchase safety shoes. According to Mr. Payne, though another probationary employee had also failed to purchase the shoes by the deadline, he was the only employee sent home. But management asserts, and Mr. Payne has not challenged, that no one in management knew of another hire who failed to purchase the shoes in time and this incident was not the cause of his firing.

Mr. Payne also pointed to Scott New referring to him as "boy" as evidence of race discrimination. While we agree with Mr. Payne that calling a grown man "boy" is certainly offensive and inappropriate, it is undisputed that Mr. New was an hourly employee and was not involved in the decision to fire Mr. Payne. We have previously held that a non-decisionmaker employee's discriminatory remarks are "not probative of a discriminatory intent behind [an employee's] termination." *Standard*, 161 F.3d at 1330. Mr. Payne, therefore, failed to establish a prima facie case of discrimination sufficient to proceed on his claim.

12

Further, Goodyear's reason for firing Mr. Payne—poor performance—has not been challenged with evidence.  Mr. Payne was unable to dispute the facts as set forth in Goodyear's affidavits.  For example, Mr. McWhorter stated that he observed Mr. Payne sitting when there were problems on the Z Calendar machine instead of helping and learning to fix the problem.  Mr. McWhorter also said that he observed Mr. Payne socializing with other employees in another department instead of training on the Z Calendar machine.  He observed that Mr. Payne had trouble learning the job duties of the Relief Operator position and that he did not see any improvement after talking to Mr. Payne about his performance.  He also witnessed Mr. Payne appearing to hide in the creel room and found Mr. Payne sleeping more than once.  Mr. Payne did not proffer evidence to dispute his "improper" cellphone use or his sleeping on the job.  Mr. Payne simply did not provide sufficient evidence to create a genuine issue as to his performance.

Mr. Payne offers conclusory assertions that he knew his job well, but an unsubstantiated and subjective belief that his performance was acceptable is insufficient to create a genuine issue of fact.  *See Holifield*, 115 F.3d at 1565. Though Mr. Payne asserts that two employees, Allen Blackwell and Kenneth Miller, support his assertion that he was doing well, this is again insufficient.  Neither of them gave the positive assessment of his work that Mr. Payne argues they did. Additionally, those statements were specific to Mr. Payne's performance at the mill

and wind-up stations. Accordingly, even accepting them as true, they are insufficient to create a dispute as to Mr. Payne's overall performance as a Relief Operator.

Therefore, we affirm the district court's order with respect to Mr. Payne's race discrimination claims.

## C

Under the ADA, employer discrimination "against a qualified individual on the basis of a disability" is prohibited as to any of the "terms, conditions, [or] privileges of employment." *See* 42 U.S.C. § 12112(a). As with race discrimination claims, we apply the familiar *McDonnell Douglas* framework. To establish a prima facie case for disability discrimination "a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability." *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). "A qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* at 1267–68.

We conclude that Mr. Payne proffered no evidence to show that Goodyear management knew of his disability, that he cannot identify a comparator, and he does not create a genuine issue with respect to his performance. We affirm the district court as to this claim as well.

14

"Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cty. Sch. Bd.,* 244 F.3d 1253, 1262 (11th Cir. 2001). "[A]n employee cannot be fired "because of" a disability unless the decisionmaker has *actual* knowledge of the disability." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005). And "[v]ague or conclusory statements revealing an unspecified capacity are not sufficient to put an employer on notice of its obligations under the ADA." *See Morisky v. Broward Cty.*, 80 F.3d 445, 448 (11th Cir. 1996).

Here, the district court properly concluded that the decision makers did not have actual knowledge of Mr. Payne's disability, and thus Mr. Payne was not discriminated against on the basis of his disability. Mr. Payne failed to provide any support for his assertions that the decision makers—Mr. Tucker, Mr. McWhorter, Mr. Mobley, and Mr. Christopher Payne—knew of his disability. In fact, Mr. Payne admitted not knowing whether management was aware that he had Lupus, though he assumed Mr. Tucker must have because it was "in his file." Mr. Payne asserted that Mr. McWhorter was aware of Mr. Payne's disability because, on one occasion, he asked Mr. McWhorter for a day off to go to the VA hospital. Mr. Payne acknowledged, however, that he did not explain to Mr. McWhorter the reason for his visit to the hospital. Such a statement does not create a disputed issue as to whether Mr. McWhorter knew of Mr. Payne's disability.

15

Mr. Payne asserts that his self-identification form put management on notice of his disability.  But Mr. Payne failed to show who in management would have reviewed the form, and thus had knowledge of his disability.  Further, the self-identification form merely contains a checkmark next to the box "[i]ndividual with a disability" without any further details about his condition.  The undisputed evidence, however, clearly indicated he was medically cleared to work with no restrictions, and he admitted multiple times at his deposition that neither his Lupus nor his kidney failure interfered with his ability to do the Relief Operator job.

Finally, as noted above, Mr. Payne has failed to contest the substantial evidence of his poor performance, or to identify a similarly-situated comparator without a disability who was not fired after performing as poorly as Mr. Payne.  We therefore affirm the grant of summary judgment as to the ADA claim.

## IV

Even when viewing all facts and any reasonable inferences therefrom in the light most favorable to him, Mr. Payne failed to establish a *prima facie* case of race and disability discrimination under Title VII and the ADA.  We therefore affirm the district court's order granting summary judgment to Goodyear.

**AFFIRMED.**

16