Terry G. ZILLYETTE, Jr., Plaintiff,

v.

CAPITAL ONE FINANCIAL CORPORATION, and Capital One Services, Inc., Defendants.

No. 96–2555–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 13, 1998.

Charles Gilbert Burr, III, Charles G. Burr, P.A., Tampa, FL, for plaintiff.

Christopher J. Greene, Adam J. Kohl, Holland & Knight LLP, Jacksonville, FL, Paul M. Thompson, Bruin S. Richardson, Hunton & Williams, Richmond, VA, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment (Dkt.21), Memorandum in Support of Summary Judgment, (Dkt. 22), Plaintiff's Amended Response in Opposition to Defendants' Motion for Summary Judgment, (Dkt.31), Plaintiff's Response to the "Statement of Undisputed Facts" Section of Capital One's Motion for Summary Judgment (Dkt.32), Plaintiff's Request for Oral Argument (Dkt.26), and Defendants' Notice of Plaintiff's failure to Comply with the Court's Order (Dkt.36).

### STANDARD OF REVIEW

This Circuit has long held that summary judgment is appropriate only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The moving party bears the initial burden of demonstrating for the court the basis for its motion for summary judgment by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which that party believes show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). Factual disputes preclude summary judgment.

In *Celotex Corp. v. Catrett,* the United States Supreme Court held:

In our view, the plain language of [Fed. R.Civ.P.] 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the moving party has satisfied its burden, the nonmoving party must:

> ... go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

A dispute is genuine, and summary judgment inappropriate, if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### REQUEST FOR ORAL ARGUMENT

Plaintiff's request for oral argument, as to Defendants' Motion for Summary Judgment, is *denied.*

### REQUEST FOR JUDICIAL NOTICE

Defendants' request that this Court take notice of Plaintiff's failure to comply with Local Rule 3.01(c) and this Court's order of December 31, 1997, is *denied.*

### STATEMENT OF FACTS

Plaintiff, Terry G. Zillyette, Jr. ("Zillyette"), alleges that his former employer, Defendant Capital One Financial Corporation and Capital One Services, Inc. (collectively "Capital One"), committed a discriminatory act by failing to make reasonable accommodations for Zillyette, and for discharging Zillyette due to his known disability, HIV infection, in violation of Title I of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12112(b)(5)(A), and 12112(a) respectively.

In July 1995, Zillyette was hired as a Customer Service Associate by Capital One Services, Inc. (Pl.'s Amended Compl. ¶ 11). Capital One Services, Inc. is a subsidiary of Capital One Financial Corp. (*Id.* at ¶ 6; Raw-dan Dep. at 4). Zillyette was responsible for receiving incoming telephone calls from Capital One's credit card customers, and answering questions or resolving disputes relating to customers' accounts (Pl.'s Amended Compl. ¶ 11). Zillyette worked four ten hour shifts per week.

From July, 1995 until February 6, 1996, the date of termination, Zillyette had nine occurrences of absenteeism, which resulted in twenty-five full days missed. On five other occasions, Plaintiff left work early (Rawdan Dep. Ex.3, Ex. 9). Zillyette received two verbal warnings and one written warning for poor attendance (*Id.,* Ex. 3). Most of Zillyette's absences were medically related (*Id.;* Lorenzen Dep. at 26–27). In December 1995, after Zillyette took ill at a company meeting and required medical assistance, Zillyette told Rawdan, his supervisor, that he was diabetic but provided no documentation (Pl.'s Dep. at 72–73). In December of 1995, Zillyette inquired on two occasions as to whether he could alter his work schedule. Zillyette wanted to work five eight-hour shifts per week (Pl.'s Dep. at 73–74).

On January 26, 1996, Zillyette learned that he was HIV positive but did not inform his employer of this diagnosis. On February 2, 1996, Capital One's management team concluded that Zillyette's excessive absenteeism, which exceeded Capital One's written policy, warranted discharge (Rawdan Dep. at 54–55). Capital One decided to terminate Zillyette on February 4th, but the discharge was postponed due to the senior manager's absence that day (*Id.* at 59). On February 5, 1996, Zillyette handed Doornbosch, the senior manager, a physician's note which stated that Zillyette suffered from an "immunologic disease" and could not work more than eight-hour days (Pl.'s Dep. at 80, Ex. 3). Zillyette also requested a leave of absence (*Id.* at 80–81). The following morning, Capital One terminated Zillyette (Pl.'s Dep. at 16; Rawdan Dep. at 80).

Zillyette filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")(Pl.'s Dep. at 94–96). The EEOC mailed out a Dismissal and Notice of Suit Rights on September 4, 1996 (Pl.'s Amended Compl. Ex. B). The Postal

Service made an unsuccessful attempt to deliver the certified EEOC letter to Zillyette on September 5, 1996. A delivery notice was left at Zillyette's residence, informing him that certified mail awaited him at the post office and could either be picked up or redelivered (Baio Aff. at 2–3, Ex. 3). A second and final certified mail notice was left at Zillyette's residence on September 10, 1996. Zillyette retrieved the letter, "on or about" September 20, 1996 (Zillyette Dep. at 110–11; Pl.'s First Amended Compl. ¶ 9). During the ninety-day filing period, Zillyette consulted with an attorney who drafted the original Complaint to this action. Zillyette's initial Complaint was ultimately filed pro se on December 12, 1996.

## DISCUSSION

Defendants advance four theories in support of their motion for summary judgment: (1) that Plaintiff's ADA claim is time-barred by Plaintiff's failure to file suit within ninety days after receiving his right-to-sue letter; (2) that Plaintiff is not a "qualified" individual with a disability under the ADA; (3) that Plaintiff did not notify Capital One of his HIV diagnosis or request a reasonable accommodation prior to Capital One's final decision to discharge Plaintiff; and, (4) that Plaintiff has improperly joined Capital One Financial Corporation as a party in this action. It is this Court's conclusion that Plaintiff's claim is time-barred by his failure to timely file his Complaint.

## FILING REQUIREMENTS

█ The ADA prohibits discrimination by a covered employer against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). The ADA specifically incorporates the procedural provisions of Title VII. See 42 U.S.C. § 12117(a). Pursuant to these provisions, a plaintiff has 180 days from the date of the employer's alleged wrongdoings to file a discrimination charge with the EEOC. See 42 U.S.C. § 2000e–5(e). The plaintiff must then file a civil action in federal court within 90 days after receiving his right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e–5(f)(1).

Capital One claims that Zillyette received constructive notice of his right-to-sue letter on September 5, 1996, the day the postal carrier left notice of an unsuccessful attempt to deliver certified mail at Zillyette's residence. Capital One asserts that the ninety-day period began to run on September 5, 1996, thereby rendering Zillyette's action, filed on the ninety-eighth day, time-barred. Zillyette insists that the ninety-day period commenced on September 20 when he actually received in hand, his right-to-sue letter.

Although the Eleventh Circuit has not confronted the issue of whether notice for pick-up or redelivery of certified mail triggers the ninety-day filing requirement, the Court has visited constructive receipt issues in other contexts. In *Law v. Hercules, Inc.*, 713 F.2d 691 (11th Cir.1983), the Court held that a plaintiff's Title VII complaint, filed ninety-one days after the EEOC's right-to-sue letter was signed by plaintiff's seventeen year-old son, was time-barred. The plaintiff unsuccessfully argued that he did not have actual notice of the letter until one or two days later. The Eleventh Circuit declared:

> There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which would render the statutory limitation meaningless. Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute.

*Id.* at 692, (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240 (11th Cir.1982)); *see also Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086 (11th Cir.1982) (wife's receipt of plaintiff's Title VII right-to-sue letter, not plaintiff's actual receipt of it, triggered the ninety-day filing period).

Other courts, including a court in our district, have held that the ninety-day filing period is triggered upon a plaintiff's receipt of the first certified mail notice requiring the claimant to pick up his mail. *See Watts–Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 42 (4th Cir.1993) (ninety-day limitation period of 42 U.S.C. § 2000e–5(f)(1) was triggered where the Postal Service delivered notice to the plaintiff that her right-to-sue letter was available for pick-up); *Adams v. Hillsborough County Hospital Au-*

*thority,* 1997 WL 661131 (M.D.Fla. Sept.25,1997)(ninety-day filing period commenced upon plaintiff's receipt of first certified mail notice); *Middleton v. Gould,* 952 F.Supp. 435 (S.D.Tex.1996) (ninety-day filing period initiated when the first of four certified mail notices were left in plaintiff's mailbox). This Court notes that some courts have rejected the constructive receipt of "notice of certified mail" rule when dealing with the thirty-day filing period for government employees under 42 U.S.C. § 2000e–16(c). *See Hornsby v. United States Postal Service,* 787 F.2d 87 (3d Cir.1986); *Sousa v. National Labor Relations Board,* 817 F.2d 10 (2d Cir. 1987).

The U.S. Supreme Court has held that "... experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). The Court has also stressed that "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984)(dismissing plaintiff's Title VII pro se complaint for failing to comply with the ninety-day filing requirement).

In the instant case, the EEOC mailed Zillyette's right-to-sue letter on September 4, 1996. The Post Office left a Notice of Delivery at Zillyette's residence on September 5, 1996 (Baio Aff. at 2–3; Ex. 3). The Delivery Notice, PS Form 3849, is a standard, bright yellow form which alerts the addressee that he has certified mail. Form 3849 also identifies the date of attempted delivery, the sender's name, the method of mailing (*i.e.,* certified, insured, *etc.*), and the type of mailpiece. Zillyette neither admits nor denies that he received the first Notice. The Post Office also left a second and final Delivery Notice at Zillyette's residence on September 10, 1996, warning him that if the mail wasn't picked up or called for, it would be returned to its sender on September 20, 1996. Zillyette claims that he did receive the September

10th Delivery Notice and picked up the EEOC letter "on or about September 20, 1996."

This Court finds that there is no reason why Plaintiff in this case should enjoy a manipulable open-ended time extension of fifteen days before the filing period begins to run. Requiring actual pick-up to commence the filing period would permit a Plaintiff to control the statutorily mandated limitations period. Even if this Court found that the delivery date of the second notice controlled, Zillyette's action would remain time-barred. We hold that the ninety-day statutory period was triggered when Zillyette received the first of the two certified mail notices from the Post Office on September 5, 1996.

### EQUITABLE TOLLING

■ Zillyette accurately points out that ADA time limitations may be tolled when equity so requires. The ninety-day time period for filing a civil action following receipt of an EEOC right-to-sue notice is a requirement in the nature of a statute of limitations, subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Zillyette claims that due to his "impaired mental condition," the ADA filing period should be tolled. Zillyette alleges that immediately prior to the filing period he was severely distraught and expressed suicidal ideation. During the ninety-day filing period, Zillyette claims that he was "very depressed," and experienced headaches and insomnia. Zillyette sought counseling from a mental health counselor at the Tampa AIDS Network throughout the relevant filing period.

■ The Eleventh Circuit has permitted equitable tolling only under a limited set of circumstances: (1) when an action is pending in state court; (2) when a defendant has concealed facts supporting a cause of action; and (3) when a defendant misled plaintiff about the nature of her rights. *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir.1986).

Under an objective standard, some courts have permitted tolling based upon allegations of mental incompetence only when the complainant has either been adjudicated mentally

incompetent or institutionalized. *See Bassett v. Sterling Drug, Inc.,* 578 F.Supp. 1244 (S.D.Ohio 1984). This stringent standard was adopted to "protect defendants against specious allegations of mental incompetence advanced in desperate efforts to save time-barred claims." *Id.* at 1248.

■ Using a subjective standard, other courts have allowed equitable tolling when the plaintiff was so mentally incompetent that he or she was "incapable of filing a claim within the requisite time period." *Moody v. Bayliner Marine Corp.,* 664 F.Supp. 232 (E.D.N.C.1987). This Court has addressed the issue of mental incompetence as it pertains to equitable tolling and has held that mental incapacity will toll the filing period only upon the demonstration of exceptional circumstances which would lead the court to conclude that Plaintiff could not have pursued her claim in a timely manner. *See Cox v. Sears, Roebuck & Co.,* 1994 WL 143019 (M.D.Fla.1994)(finding that plaintiff's ability to make arrangements and travel independently, manage a rental property, fill out forms for insurance purposes and act as a trustee did not render her incapacitated for tolling purposes).

■ Zillyette's deposition testimony demonstrates that his alleged mental impairment was not so critical as to prevent him from filing his discrimination claim within the statutory period. Zillyette states that he was aware of the ninety-day filing requirement (Pl.'s Dep. at 108). Zillyette was employed prior to, throughout and after the relevant filing period, by Kelly Services as a Customer Representative (Pl.'s Dep. at 10). Zillyette also retrieved his right-to-sue letter from the Post Office independently (Pl.'s 2d Dep. at 8). Additionally, Zillyette sought legal advice from Bay Area Legal Services prior to filing his charge of discrimination with the EEOC and then again during the ninety-day filing period. Zillyette was also referred to an outside attorney and independently followed up on the referral. Although the referred attorney did not ultimately take Zillyette's case, she did counsel Zillyette regarding the filing date, and drafted the Plaintiff's initial Complaint in its entirety.

Zillyette filed the Complaint on his own (Pl.'s Dep. at 108).

This Court finds that Zillyette was competent and capable enough of filing his Complaint within the prescribed period. The Court finds that Zillyette's ADA claim is time-barred and equitable tolling based upon mental incompetence does not apply.

Although this Court is not required to address Defendants' additional issues raised in their Motion for Summary Judgment, the Court will respond to the remaining issues.

### COUNT I—FAILURE TO ACCOMMODATE

■ The Eleventh Circuit and this Court have required that for a plaintiff to establish a prima facie case of ADA discrimination, the plaintiff must demonstrate: (1) he has a disability; (2) he is a qualified individual; and (3) he was discriminated against because of the disability. *See Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.1996); *Sawinski v. Bill Currie Ford, Inc.,* 881 F.Supp. 1571, 1573 (M.D.Fla.1995).

■ Disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Evidence tending to indicate the presence of an impairment that limits life activities is a factual question as to "whether those symptoms substantially limited a major life activity." *Pritchard,* 92 F.3d at 1134. Viewing the evidence in the light most favorable to the non-moving party, Zillyette presents sufficient evidence that he was HIV positive, diabetic and suffered from a series of ailments associated with HIV infection which prevented him from regularly reporting to work, and on other occasions, from working full shifts. Genuine issues of material fact exist as to whether Plaintiff was disabled, and such issues would be for the jury to decide.

■ Having a disability does not automatically extend the protections of the ADA. For a prima facie case, the complainant must show that he is a "qualified individual" with a disability. A "qualified individual" is one who "with or without reasonable accommoda-

tion, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Capital One argues that Zillyette is not a qualified individual because Zillyette's excessive absenteeism prevented Zillyette from fulfilling the essential function of his job—showing up for work.

The Supreme Court has held that a qualified employee is one who is able to satisfy all of the job's requirements, despite his disability. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). The Eleventh Circuit has held that a new and temporary employee's numerous, unpredictable and sporadic absences within the first few months of employment supports the conclusion that the employee could not fulfill the essential function of his employment—his presence on the job. *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir.1994), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994). In *Jackson,* the new employee was absent six days over a two and one-half month probationary period. The Court noted that five of the six absences were related to the employee's disability. The Court ruled that due to the employee's excessive and sporadic absences, no reasonable accommodation could have been made to cure the unpredictable nature of the absences and entered summary judgment for the employer. Although the *Jackson* Court was interpreting "qualified individual" for purposes of the Rehabilitation Act, the Eleventh Circuit has stated that "Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA." *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132, n. 2 (11th Cir.1996).

Similarly in *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir.1994), the court held that an employee who had missed forty days of work in a seven-month period where her presence was essential, was not a qualified individual because she could not meet the attendance requirement. Summary judgment was entered for the Employer. Although this Court has declined to grant summary judgment on this same issue in the past, *Jackson* and *Tyndall* are instructive in the instant case. *See Sawinski*, 881 F.Supp. at 1574, (summary judgment inappropriate where a twelve-year employee missed one day of work and was late seven times in one year).

Zillyette worked at Capital One from July 1995 until his termination on February 6, 1996. During those sixth months, Zillyette had nine occurrences of absenteeism, two of which were non-disability related, resulting in twenty-five missed days. On five occasions, two of which were non-disability related, Plaintiff left work early (Rawdan's Dep, Ex. 3). Capital One does not argue in its Memorandum that Zillyette could not satisfactorily meet the job requirements when he was present at work. Instead, Defendant takes issue with Zillyette's poor and unpredictable attendance. The nature of Zillyette's job as a Customer Service Associate required his on-site presence. Capital One further asserts that Zillyette's unpredictable absences created scheduling problems, such as understaffed shifts. Capital One claims that this in turn affected Capital One's ability to give their customers adequate and prompt service.

Zillyette claims that his accommodation requests, made in December of 1995, to work five eight-hour days per week, would have helped him to perform the essential requirements of the job. Plaintiff also requested an indefinite leave of absence as an accommodation, the day before his termination.

The ADA imposes upon employers the duty to provide reasonable accommodations for know disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). An " 'accommodation' is 'reasonable'—and, therefore, required under the ADA-only if it enables the employee to perform the essential functions of her job." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir.1997) (citing 29 C.F.R. § 1630.2(*o*)(ii)). It is the plaintiff's burden to first identify an accommodation that the plaintiff believes would permit him to fulfill his job requirements and then plaintiff must show that the accommodation is reasonable. *Id.* at 283.

Zillyette presents no competent evidence that either accommodation would have

remedied Zillyette's attendance problem. Zillyette conceded repeatedly that during his employment with Capital One, his HIV-related illnesses prevented him from performing his job, and attending or remaining at work as scheduled on a predictable basis. (Pl.'s Dep. at 49; 66; 90; 93). Moreover, Zillyette's expert, Nancy L. Breuer, M.A., Former Director of HIV/AIDS Education for the American Red Cross in Los Angeles, opined that "...if Mr. Zillyette's requested accommodation had been tried... [it] probably would not have been adequate to reverse his attendance pattern in the short term." (Breuer's Declaration at 7). Zillyette cannot show that either accommodation, a reduction to eight-hour shifts, or an indefinite leave of absence, would have allowed him to meet the necessary attendance requirement. The Court concludes that Capital One is entitled to prevail on summary judgment where the employee is not otherwise qualified, and there exists no genuine issue of fact as to the availability of a reasonable accommodation.

### COUNT II—DISCRIMINATORY DISCHARGE

Zillyette's ADA discriminatory discharge claim is based solely upon his diagnosis of HIV infection. Capital One asserts that it is entitled to summary judgment because Zillyette has failed to show that Capital One had knowledge of Zillyette's HIV infection, an essential element of Zillyette's prima facie case.

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a).

As an essential element to proving discriminatory discharge based upon a disability, the plaintiff must prove that his or her employer had knowledge of the disability at the time of the adverse employment action. *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). The Eleventh Circuit explained:

> [An] employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the dis-

ability... At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "because of" a disability unless it knows of the disability. If it does not know the disability, the employer is firing the employee "because of" some other reason.

*Id.* at 448 (quoting *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 932 (7th Cir.1995)).

In *Morisky,* the Court rejected plaintiff's argument that plaintiff's prospective employer had knowledge of her mental disability because plaintiff's application stated that she had taken special education courses and was illiterate. The Court refused to impute such knowledge to the defendant and affirmed summary judgment in their favor. The Court relied upon *Pridemore v. Rural Legal Aid Society of West Central Ohio,* 625 F.Supp. 1180 (S.D.Ohio 1985). The *Pridemore* court held that plaintiff's application, which conveyed that plaintiff suffered "minuscule brain damage to the perceptual and sensory-motor areas of the brain" at birth, did not inform the prospective employer that plaintiff's disability was cerebral palsy. The *Morisky* Court further declared that "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Morisky,* 80 F.3d at 448.

As Capital One points out, Zillyette admits that he did not inform any of Capital One's managers, prior to discharge, that he was HIV infected(Pl.'s Dep. at 77–78). Zillyette contends that although Capital One "may not have known of Zillyette's HIV diagnosis" at any time before Zillyette's discharge was decided upon, Capital One should have known Zillyette was ill generally, due to Zillyette's alleged diabetes and his excessive medically-related absenteeism(Pl.'s Dep. at 84, 86; Pl.'s Amended Response to Defendant's Motion for Summary Judgment at 19). Further, Zillyette argues that his physician's note, presented to Capital One the day before he was discharged, stated that Zillyette suffered from an "immunologic disease." Zillyette

claims that this diagnosis alerted Capital One to the fact that he was suffering from HIV infection.

Conversely, Capital One alleges that management thought the term "immunologic disease" was something that related to Zillyette's diabetes, and never realized that it was a reference to HIV infection. Capital One contends that Zillyette was discharged solely because of his excessive and unpredictable absenteeism, which exceeded Capital One's attendance policy and continued despite verbal and written warnings. Capital One also claims that Zillyette never presented any documented proof of his illness, other than the aforementioned note the day before discharge, as Capital One had often requested.

As in *Morisky*, this Court finds that there is no evidence to show that Capital One knew that Zillyette's disability was in fact HIV infection. The Court grants the Motion for Summary Judgment as to this issue.

### *JOINT EMPLOYER THEORY*

Finally, Capital One claims that Capital One Financial Corporation was improperly joined as a co-defendant to this litigation. Capital One argues that Zillyette's claim against Capital One Financial Corporation is premised solely on the undisputed existence of a parent-subsidiary relationship between Capital One Financial Corporation and Capital One Services, Inc. Capital One further asserts that Zillyette has not alleged or shown that Capital One Financial Corporation exercises any labor management control over its subsidiary, Capital One Services, Inc.

■ Generally, "where two or more employers exert significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment," a "joint employer" relationship emerges. *N.L.R.B. v. Browning–Ferris Industries of Pa., Inc.*, 691 F.2d 1117 (3d Cir.1982)(citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964)). Whether the contracting employer "possessed sufficient indicia of control to be an

'employer' is essentially a factual issue." *Boire*, 376 U.S. at 481, 84 S.Ct. at 898–99. *See also Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir.1994).

■ Zillyette's proof supporting a "joint employer" theory includes: (1) that the subsidiary's attendance policy was found within his employee handbook entitled, "Capital One Financial Corporation Handbook"; (2) that Zillyette's payroll records and all benefits displayed the parent company's name; (3) that a confidentiality agreement Zillyette was required to sign defined "employer" as "Capital One Financial Corporation"; (4) that the subsidiary company used stationary with the Parent company's letterhead, and (5) that Zillyette signed a document at his exit interview which provided in part "... such items being the property of or under the control of Capital One Financial Corporation have been returned..." (Pl.'s Response to Capital One's Undisputed Facts, Dkt. 32 at 9).

Because factual disputes preclude summary judgment, the issue of whether a joint employer relationship existed is one for the jury to decide. However, the Court has concluded that the claims raised in this case are time-barred, and therefore this issue will not proceed to trial.

The Court, having considered all the arguments of the parties, finds that Plaintiff's Title I action is time-barred, and Defendants' Motion for Summary Judgment is granted as to Counts I and II. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED,** and the Clerk of Court shall enter judgment for Defendants.