Donald **HANSEN**, Plaintiff,

v.

**SMALLWOOD, REYNOLDS, STEWART, STEWART & ASSOCIATES, INC.,** d/b/a **Smallwood, Reynolds, Stewart, Stewart & Associates of Florida, Inc.,** Defendant.

No. 8:99–CV–1912–T–17B.

United States District Court, M.D. Florida, Tampa Division.

Sept. 29, 2000.

Matthew P. Farmer, Farmer & Fitzgerald, Tampa, FL, for Donald Hansen, plaintiff.

Barbara A. Sinsley, Harris, Barrett, Mann & Dew, Tampa, FL, Kristin A. Demers, Harris, Barrett, Mann & Dew, St. Petersburg, FL, David M. Vaughan, Richard M. Escoffery, Elarbee, Thompson & Trapnell, Atlanta, GA, for Smallwood, Reynolds, Stewart, Stewart & Associates, Inc., defendant.

## ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on:

(1) Defendant, Smallwood, Reynolds, Stewart, Stewart & Associates, Inc.'s [hereinafter "Smallwood"], Dispositive Motion for Summary Judgment, (Dkt.18), filed on April 13, 2000;

(2) Defendant, Smallwood's, Memorandum in Support of Its Dispositive Motion for Summary Judgment, (Dkt.19), filed on April 13, 2000;

(3) Plaintiff, Donald Hansen's, Dispositive Cross–Motion for Summary Judgment, (Dkt.31), filed on May 5, 2000;

(4) Defendant, Smallwood's, Response in Opposition to Plaintiff's Dispositive Cross–Motion for Summary Judgment, (Dkt.33), filed on May 19, 2000;

(5) Plaintiff, Donald Hansen's, Notice of Supplemental Authority, (Dkt.38), filed on June 16, 2000; and,

(6) Defendant, Smallwood's, Response to Plaintiff's Notice of Supplemental Authority, (Dkt.39), filed on June 20, 2000.

## I. Background

On August 23, 1999, Plaintiff filed a Complaint and Request for Jury Trial, (Dkt.1), against Defendant Smallwood for alleged violations of the Americans with Disabilities Act of 1990 [hereinafter "ADA"], 42 U.S.C. § 12101, et seq., as amended. Plaintiff states within Plaintiff's Complaint that Plaintiff has met all administrative prerequisites to filing this cause of action against Defendant.

Plaintiff's Complaint contains one Count for an alleged violation of the ADA. Plaintiff states that Defendant originally hired Plaintiff on a six month basis at an hourly rate of pay. At the end of the six month period, Defendant, according to Plaintiff, gave Plaintiff a favorable review and promoted Plaintiff to a permanent salaried position with an increase in pay. In, or around, April 1995, Plaintiff allegedly notified Defendant that Plaintiff had a disability which Plaintiff described as manic depression. Plaintiff states that Plaintiff notified Defendant that Plaintiff suffered from manic depression because Plaintiff had recently undergone a change in medication and thought that an accommodation for this change in medication was neces-

sary. According to Plaintiff, Plaintiff's disability did not affect Plaintiff's job performance.

On June 3, 1995, Plaintiff states that Plaintiff's employment was terminated. According to Plaintiff, the reason Plaintiff's employment was terminated was because of a "difference in methodologies." Plaintiff states that after Defendant was notified of Plaintiff's disability, Defendant excluded Plaintiff from meetings, retracted several job duties, and removed Plaintiff's computer from Plaintiff's office.

Count One of Plaintiff's Complaint states, in pertinent part, that:

14. [Plaintiff] suffers from a psychological impairment that substantially limits one or more major life activities and is therefore "handicapped" within the meaning of the [ADA], 42 U.S.C. § 12102(2)(A), because [Plaintiff's] impairment affects [Plaintiff's] ability to work on a sustained basis.

15. [Plaintiff] was regarded by [his] employer as having a disability, pursuant to 42 U.S.C. § 12102(2)(C).

16. [Plaintiff] is a qualified individual with a disability in that he was able to perform the essential function of his employment position at all time[s].

17. [Defendant] failed to make a reasonable accommodation of [Plaintiff's] disability.

18. [Defendant] discriminated against [Plaintiff] in violation of the [ADA] by discharging him.

(Dkt.1). Plaintiff states that as a result of the alleged discriminatory actions taken against Plaintiff by Defendant, Plaintiff suffered a loss of wages, loss of benefits, loss of reputation, loss of enjoyment of life, inconvenience, and humiliation.

## II. *Standard of Review*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue of material fact" since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.* That burden of showing a basis for a motion can be discharged by showing that there is an absence of evidence to support the non-moving party's case. *See generally id.* at 323–325, 106 S.Ct. 2548.

Issues of fact are " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact

must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir. 1979).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "[nothing] more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981).

## III. *Defendant Smallwood's Motion for Summary Judgment*

On April 13, 2000, Defendant Smallwood filed a Dispositive Motion for Summary Judgment. (Dkt.18). In the Dispositive Motion for Summary Judgment, Defendant states that summary judgment is warranted because: 1) Plaintiff cannot establish a *prima facie* case of disability discrimination; 2) Plaintiff did not have a disability; 3) Defendant did not perceive Plaintiff as having a disability; 4) Plaintiff was not a qualified individual; 5) Plaintiff has not shown that he was discriminated against because of his disability; 6) Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination; and, 7) Plaintiff cannot show that Defendant's proffered reason is pretextual.

### A. *Discussion*

#### i. *Prima Facie Claim of Discrimination*

Defendant Smallwood states that summary judgment is appropriate because, according to Defendant, Plaintiff is unable to prove that Plaintiff is disabled, that Plaintiff is a qualified individual, or that Plaintiff was discriminated against based on Plaintiff's alleged disability.

■ The Americans with Disabilities Act prohibits discrimination by a covered entity against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In order for a plaintiff to establish a *prima facie* case of discrimination in violation of the ADA, the plaintiff must prove that: (1) the plaintiff has a "disability"; (2) the plaintiff is a "qualified individual"; and, (3) the alleged discrimination against the plaintiff was the result of unlawful "discrimination" based on the plaintiff's disability. *See Sawinski v. Bill Currie Ford, Inc.*, 881 F.Supp. 1571, 1573 (M.D.Fla. 1995) (citing *Tyndall v. National Educ. Ctrs. Inc., of California*, 31 F.3d 209, 212 (4th Cir.1994)).

#### a. *Disability*

"Disability" is defined by the ADA as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . ." 42 U.S.C. § 12102(2)(A). A physical impairment includes "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more bodily system." *See Sawinski*, 866 F.Supp. at 1386 (citing 29 C.F.R. § 1630.2). Evidence tending to indicate the existence of an impairment that limits life activities brings about a factual question as to "whether those symptoms substantially limited a major life activity." *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1134 (11th Cir.1996); *Zillyette v. Capital One Financial Corp.*, 1 F.Supp.2d 1435, 1441 (M.D.Fla.1998); *Sawinski*, 881 F.Supp. at 1573.

Defendant claims that summary judgment is warranted because Plaintiff does not have a disability covered by the ADA. Within Defendant's Dispositive Motion for Summary Judgment, Defendant assumes for the purpose of summary judgment that Plaintiff's manic depression is a mental impairment under the ADA. As Defendant assumes for purposes of Defendant's Dispositive Motion for Summary Judgment that Plaintiff suffers from manic depression and manic depression is considered a mental impairment under the ADA, the

Court will not address whether manic depression is a mental impairment covered under the ADA.

Even though Defendant assumes that manic depression is a mental impairment under the ADA, Defendant maintains that Plaintiff does not suffer from a disability. Defendant states that Plaintiff's manic depression does not substantially limit one or more of Plaintiff's major life activities. Without the existence of proof regarding the major life activities that are limited by Plaintiff's manic depression, Defendant states that Plaintiff is unable to prove a *prima facie* claim of discrimination.

■ Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). If a plaintiff's impairment does not substantially limit a major life activity, the plaintiff is not disabled under the ADA or the FCRA and cannot recover for alleged disability discrimination. The determination of whether an impairment substantially limits one or more of a plaintiff's major life activities should be made on a case-by-case basis. *See Desai v. Tire Kingdom, Inc.,* 944 F.Supp. 876, 880 (M.D.Fla.1996) (citing *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328, 1342 (S.D.Tex.1987)). A court's decision regarding whether one or more of a plaintiff's major life activities are limited does not merely rest on the type of injury or impairment from which a plaintiff suffers. *See id.* The Court must look to the type of impairment from which the plaintiff suffers, but must also look at the plaintiff and the plaintiff's specific situation on an individualized basis. *See id.* The Court must consider several factors in making a determination as to whether a major life activity is limited: (1) the number and type of jobs from which the plaintiff is disqualified; (2) the geographical area to which the plaintiff had access; (3) and the plaintiff's job expectations and training. *See id.*

According to Defendant, Plaintiff is unable to prove that any major life activity, including Plaintiff's ability to work, is substantially limited by Plaintiff's alleged impairment. In support of this theory, and, generally, in support of summary judgment, Defendant submits several deposition transcripts. Defendant points out that information contained within those deposition transcripts shows that Plaintiff had no difficulty performing duties associated with a class of jobs, or even duties specifically associated with Plaintiff's job.

■ While the Court recognizes that Plaintiff has stated within the record that he had no difficulty performing his specific job duties, sufficient evidence exists within the record to create a genuine issue of material fact as to whether Plaintiff's alleged impairment substantially limits one or more of Plaintiff's major life activities. Specifically, the deposition transcript of Steven Horton states, in pertinent part, that:

Q. Did Mr. Hansen put in more than 40 hours per week on the average once he was full time?

A. I would have to say, particularly during the latter months of his employment, yes, because, again, he was not able to work efficiently while he was there. So not only did Mr. Hansen put in overtime, we had to hire extra administrative assistants and many people had to work overtime, which is not something I believe in. Okay. But that was a situation where we had to do it because the work was not being done properly during regular business hours.

. . .

Q. Did [Plaintiff] ever request assistance in improving his performance?

A. Yes, and we made every effort to give him that assistance.

Q. Okay. What did he request?

A. He requested administrative help getting the work done. And, again, understand that Don Hansen came to work with us as a very experienced specification writer, based on his resume, past president of the Atlanta Chapter of

Specification Writers. This is not the type of individual that we expected would need a tremendous amount of help. Okay. We expected just the opposite.

Q. But he did request the administrative help?

A. Yes. He was not able to get his work done, and we provided that administrative help.

. . .

Q. . . . How did you help [Plaintiff] manage his deadlines?

A. In addition to meeting with [Plaintiff] and everyone else in the office once a week, we would check in on [Plaintiff] more frequently, and, again, sit down and kind of reset the clock for [Plaintiff] over and over and over again because he was generally confused about when his deadlines were, on more than one occasion.

Q. About how many times did that happen?

A. About how many times did that happen? I would say that happened numerous times. More than ten times. Okay.

. . .

Q. Okay. What did [Plaintiff] tell you about his inability to do his job?

A. He said, as it says in this memo, that there were days where he couldn't remember what he had done, and that's why he was having trouble scheduling and, you know, he was on a different medication and had changed his doctors and, you know, he was very embarrassed. But he directly attributed his job performance or inability to do his job to his medical problems.

(Dkt.24).

In light of the information contained in the record of this case, the Court finds that a genuine issue of material fact exists as to whether Plaintiff's alleged disability substantially limits a major life activity, specifically Plaintiff's ability to work. As such, summary judgment is not proper.

b. *Qualified Individual*

Having a disability, however, does not automatically extend the protections of the ADA to every individual who possesses such a disability. In addition to showing that a plaintiff suffers from a disability, the plaintiff must show that the plaintiff is a "qualified individual" with a disability. *See Zillyette,* 1 F.Supp.2d at 1441–42. A "qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *See also id.*

In support of summary judgment, Defendant states that Plaintiff is not a qualified individual because Plaintiff is unable to perform the essential functions of his job, with or without reasonable accommodation. In asserting that Plaintiff is not a qualified individual because Plaintiff is unable to perform the essential functions of his job, with or without reasonable accommodation, Defendant relies on the fact that Plaintiff has allegedly applied for, and received, social security disability benefits. Defendant states that since Plaintiff is allegedly too disabled to work, and is, therefore, receiving social security disability benefits, Plaintiff cannot be a qualified individual under the ADA.

In opposition to Defendant's Motion for Summary Judgment, Plaintiff has submitted a Dispositive Cross–Motion for Summary Judgment. (Dkt.31). Plaintiff relies on the arguments presented within Plaintiff's Dispositive Cross–Motion for Summary Judgment as Plaintiff's opposition to Defendant's Motion for Summary Judgment. Within Plaintiff's Cross–Motion for Summary Judgment, Plaintiff states that Plaintiff is a qualified individual because Plaintiff was qualified to perform his job duties. Plaintiff states that Plaintiff was qualified to perform his job duties and Defendant believed that Plaintiff was qualified to perform those duties. According to Plaintiff, this belief held by Defendant is shown through Defendant's offering Plain-

tiff a part-time position with Defendant after Plaintiff completed an internship for Defendant. After Plaintiff worked for Defendant on a part-time basis, Defendant offered Plaintiff a full-time position. Plaintiff further points out that Plaintiff worked for Defendant from June 1994, until April 25, 1995, without any written discipline.

In addition to providing examples of how Plaintiff was qualified to perform the job duties associated with Plaintiff's employment, Plaintiff also states that the fact that Plaintiff is now receiving social security disability benefits does not mean that Plaintiff was unqualified to perform his previous job duties. Plaintiff states that the very reason that Plaintiff returned to school and worked for Defendant as an intern was because the social security disability program was attempting to rehabilitate Plaintiff. According to Plaintiff, it was part of these rehabilitative efforts that allowed Plaintiff to gradually begin to work for Defendant. Plaintiff states that after Plaintiff's employment was terminated, Plaintiff sought to acquire other employment. However, at the urging of the social security office, Plaintiff ceased efforts to find other employment opportunities.

In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the Supreme Court of the United States stated that:

> The Social Security Disability Insurance (SSDI) program provides benefits to a person with a disability so severe that she is "unable to do [his or her] previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy." § 223(a) of the Social Security Act, as set forth in 42 U.S.C. § 423(d)(2)(A). This case asks whether the law erects a special presumption that would significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the Americans with Disabilities Act of 1990(ADA), claiming that "with ... reasonable accommodation" [he or she]

> could "perform the essential functions" of [his or her] job. § 101, 104 Stat. 331, 42 U.S.C. § 12111(8).

> We believe that, in context, these two seemingly divergent statutory contentions are often consistent, each with the other. Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA.

*Id.* at 797, 119 S.Ct. 1597.

In order to survive a defendant's motion for summary judgment, a plaintiff that is receiving SSDI benefits and is also claiming disability discrimination under the ADA, "must explain why that SSDI contention is consistent with [his or her] ADA claim that [he or she] could 'perform the essential functions' of [his or her] previous job, at least with 'reasonable accommodation.'" *Id.* at 798, 119 S.Ct. 1597.

In the case at hand, Plaintiff has stated within the record, and has provided evidence to support, that a reasonable explanation exists to show how Plaintiff's SSDI contention is consistent with Plaintiff's ADA claim that Plaintiff could "perform the essential functions" of Plaintiff's job. According to Plaintiff, it was only after Plaintiff's medication was changed that Plaintiff began to experience difficulties relating to his job performance. (Dkt.26). Plaintiff notified Defendant on April 25, 1995, of Plaintiff's alleged disability and the fact that Plaintiff's medication had been changed. (Dkt.26). Plaintiff, at the April 25, 1995, meeting, also notified a representative of Defendant that Plaintiff would return to his normal treating physician and would begin to take his normal medication again.

In addition, Plaintiff has stated, and Defendant has acknowledged, that Plaintiff was originally used as an intern, that Plaintiff was subsequently hired as a part-time employee, and that Plaintiff was later hired as a full-time employee by Defendant. (Dkts.21, 24, 26). Plaintiff and De-

fendant have also acknowledged throughout the record that Plaintiff's resume is impressive. (Dkts.24, 26). According to testimony submitted in deposition transcripts, Plaintiff was previously employed in a similar position to that position held by Plaintiff with Defendant and Plaintiff was previously the past president of the Atlanta Chapter of Specification Writers. (Dkt.24).

In light of the information contained within the record, the Court finds that Defendant's Motion for Summary Judgment must be denied because a genuine issue of material fact exists as to whether Plaintiff is a qualified individual under the ADA.

### c. *Discrimination Based on Plaintiff's Disability*

In addition to proving the existence of a disability, and that a plaintiff is a qualified individual, a plaintiff must also prove that the plaintiff was discriminated against based on that disability. Defendant claims that summary judgment is warranted because Plaintiff was not discriminated against because of Plaintiff's alleged disability. Defendant states that Plaintiff's employment was terminated because Plaintiff failed to follow Defendant's methodology for specification writing.

According to Plaintiff, summary judgment in Defendant's favor is not warranted because Defendant's alleged reason for terminating Plaintiff's employment is pretextual. Plaintiff states that: 1) Defendant never informed Plaintiff that Defendant did not approve of Plaintiff's methodology; 2) there is no dispute that Defendant did not provide a written warning to Plaintiff before terminating Plaintiff's employment; 3) there is no dispute that Defendant ever warned Plaintiff that Plaintiff's alleged deficiencies could lead to termination of Plaintiff's employment; 4) Plaintiff was a valued employee, receiving two promotions in the eleven months he was employed; 5) Defendant was confident enough in Plaintiff's performance that, after six months of part-time employment, Plaintiff

was offered the position of the first full-time Tampa specifications writer; and 6) the managers of Defendant's Tampa office did not decide to replace Plaintiff until after Plaintiff disclosed his alleged disability to Defendant, and only nine days after Plaintiff did so.

When determining whether a plaintiff was discriminated against based on the plaintiff's alleged disability, the burden shifting analysis used in analyzing Title VII employment discrimination cases applies. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.2000). Under *McDonnell Douglas Corp. v. Green* and *Texas Dept. Community Affairs v. Burdine,* the plaintiff bears the burden of establishing a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After the plaintiff establishes a prima facie case of discrimination the burden shifts to the defendant. *See Texas Dept. Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the burden shifts to the defendant, the defendant is required to show a "legitimate nondiscriminatory reason" for the alleged discriminatory action. *See id.* The defendant is only required to produce a nondiscriminatory reason for the alleged discriminatory actions. *See id.* Defendant is not required to bear the burden of proof. *See id.* Thus, the burden of production that shifts to the defendant, once a plaintiff has established a prima facie case of discrimination, is "exceedingly light" and easily established. *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983). Once the defendant satisfies the burden of production, the plaintiff is required to prove by a preponderance of evidence that the defendant employer possessed a discriminatory intent or that the defendant's alleged nondiscriminatory reason is a mere pretext. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In the case at hand, Plaintiff states throughout the record that Defendant dis-

criminated against Plaintiff based on Plaintiff's alleged disability. Specifically, Plaintiff states that Defendant terminated Plaintiff's employment only days after Plaintiff notified Defendant of Plaintiff's alleged disability. (Dkt.26). Further, in Plaintiff's EEOC Affidavit, and Plaintiff's deposition testimony, Plaintiff states that Plaintiff informed Defendant of his medical condition, and shortly thereafter, Plaintiff states that Plaintiff felt that he was being denied communication and the collegiality of the principals and Plaintiff's co-workers. Plaintiff states that Plaintiff's position was almost immediately replaced, possibly by an individual that Defendant had already selected before Plaintiff's employment was discharged. (Dkt. 26, exhibit 10).

█ In light of the previously mentioned information, the court finds that Plaintiff has provided the Court with sufficient information to withstand Defendant's Motion for Summary Judgment as to whether Plaintiff was discriminated against based on Plaintiff's disability. As such, Defendant must produce at least one nondiscriminatory reason for allegedly taking the actions complained of Defendant alleges and provides sufficient information to satisfy the burden of production under *McDonnell Douglas* and *Burdine* of a non-discriminatory reason for terminating Plaintiff's employment. In satisfaction of this requirement, Defendant states through deposition testimony that Plaintiff's employment was terminated because Plaintiff failed to follow the methodology espoused by Defendant. (Dkt.24). Further, Defendant states through deposition testimony that Plaintiff was repeatedly late in finishing projects. (Dkt.24).

As Defendant has provided sufficient information to establish a non-discriminatory reason for terminating Plaintiff's employment, Plaintiff must now provide the Court with some evidence that Defendant's alleged nondiscriminatory action is a mere pretext. According to Plaintiff, Defendant's nondiscriminatory reason for terminating Plaintiff's employment is a pretext. Plaintiff states through deposition testimony that Plaintiff was never informed that Defendant believed Plaintiff was adopting an incorrect methodology before Plaintiff's employment was terminated. (Dkts.25, 26, 27). In addition, Plaintiff states through deposition testimony that during Plaintiff's employment with Defendant, Defendant promoted Plaintiff twice and only decided to terminate Plaintiff's employment after Plaintiff informed Defendant about Plaintiff's alleged disability. (Dkts.25, 26, 27).

After thoroughly reviewing the entire record of this case, the Court finds that Plaintiff has established to a degree sufficient to avoid the entry of summary judgment in Defendant's favor that Defendant's alleged discriminatory actions were taken because of Plaintiff's disability. As such, Defendant's Dispositive Motion for Summary Judgment must be denied.

## IV. Plaintiff's Dispositive Cross–Motion for Summary Judgment

### A. Discussion

#### i. Prima Facie Claim of Discrimination

Plaintiff claims, within Plaintiff's Dispositive Cross–Motion for Summary Judgment, that summary judgment is appropriate because no reasonable jury could find in favor of Defendant. According to Plaintiff, Plaintiff has fully complied with the requirements for alleging and proving a *prima facie* claim of disability discrimination under the ADA, and, therefore, summary judgment in Plaintiff's favor is appropriate.

As previously stated, the ADA prohibits discrimination by a covered entity against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In order for a plaintiff to establish a *prima facie* case of discrimination in violation of the ADA, the plaintiff must prove that: (1) the plaintiff has a "disability"; (2) the plaintiff is a "qualified individual"; and, (3) the alleged discrimination against the plaintiff was the result of unlawful "discrimination" based

on the plaintiff's disability. *See Sawinski,* 881 F.Supp. at 1573 (citing *Tyndall v. National Educ. Ctrs. Inc., of California,* 31 F.3d 209, 212 (4th Cir.1994)).

### a. *Disability*

"Disability" is defined by the ADA as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual. . . ." 42 U.S.C. § 12102(2)(A). A physical impairment includes "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more bodily system." *See Sawinski,* 866 F.Supp. at 1386 (citing 29 C.F.R. § 1630.2). Evidence tending to indicate the existence of an impairment that limits life activities is a factual question as to "whether those symptoms substantially limited a major life activity." *See Pritchard,* 92 F.3d at 1134; *Zillyette,* 1 F.Supp.2d at 1441; *Sawinski,* 881 F.Supp. at 1573.

Plaintiff states, within Plaintiff's Dispositive Cross–Motion for Summary Judgment, that no reasonable jury could find that Plaintiff is not disabled under the ADA. In support of this claim, Plaintiff states that Plaintiff suffers from a mental impairment that substantially limits at least one of Plaintiff's major life activities.

In response to Plaintiff's Dispositive Cross–Motion for Summary Judgment, Defendant states that Plaintiff's alleged disability does not substantially· limit one or more of Plaintiff's major life activities. In addition, Defendant states that Defendant did not regard Plaintiff as being disabled.

After thoroughly reviewing the record of this case, the Court finds that a genuine issue of material fact exists as to whether one or more of Plaintiff's major life activities was substantially limited by Plaintiff's alleged disability. In support of this finding, the Court points to the deposition transcript of Plaintiff's wife, Pamela J. Hansen, which states, in pertinent part, that:

Q. How long did [Plaintiff] have these type symptoms before he was finally diagnosed with bipolar illness and prescribed lithium?

A. I can remember it starting in about 1973 because we moved to Atlanta in '72 and it was about—it was within that year or the following year.

Q. And you stated in the letter that even when he had those symptoms, he was able to maintain his personal hygiene?

A. Yes.

Q. And you also stated that he was able to maintain his work?

A. Yes.

. . .

Q. Okay. During the time [Plaintiff] worked for [Defendant], he was able to go to work each day?

A. Oh, yes.

Q. And did he drive himself home after work?

A. Yes.

Q. Did [Plaintiff] help out around the house at all?

A. Yes.

(Dkt.21).

As a genuine issue of material fact exists as to whether one or more of Plaintiff's major life activities was substantially limited, Plaintiff's Dispositive Cross–Motion for Summary Judgment must be denied on the issue of whether Plaintiff is disabled.

### b. *Qualified Individual*

In addition to showing that a disability exists, Plaintiff must also show that Plaintiff is a "qualified individual" with a disability. *See Zillyette,* 1 F.Supp.2d at 1441–42. A "qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also id.*

In support of summary judgment, Plaintiff claims that Plaintiff was able to perform the essential functions of his job. Plaintiff claims that Defendant's actions in

promoting Plaintiff from an unpaid intern to a part-time employee and finally to a full time employee evidences Plaintiff's ability to perform the essential functions of Plaintiff's job.

In opposition to Plaintiff's claim that Plaintiff is a qualified individual, Defendant states that Plaintiff could not perform his job duties in a manner that coincided with Defendant's master specification and the requirement to follow the master specification. In addition, Defendant alleges that Plaintiff cannot possibly claim, and be entitled to, SSDI benefits because Plaintiff is permanently disabled to such an extent that prevents Plaintiff from obtaining work in any forum, and also be designated as a qualified individual under the ADA.

As this Court has previously stated when the Court discussed Defendant's Dispositive Motion for Summary Judgment, a material issue of genuine fact exists as to whether Plaintiff is a qualified individual. Defendant has provided the Court with sufficient information within the record to show that a genuine issue of material fact exists as to whether Plaintiff was a qualified individual under the ADA. Specifically, Defendant points out that:

> Q. Did [Plaintiff] put in more than 40 hours per week on the average once he was full time?
>
> A. I would have to say, particularly during the latter months of his employment, yes, because, again, he was not able to work efficiently while he was there. So not only did [Plaintiff] put in overtime, we had to hire extra administrative assistants and many people had to work overtime, which is not something I believe in. But that was a situation where we had to do it because the work was not being done properly during regular business hours.

(Dkt.24).

As the Court finds that a genuine issue of material fact exists as to whether Plaintiff is a qualified individual under the ADA, summary judgment in Plaintiff's favor is not appropriate.

### c. *Discrimination Based on Plaintiff's Disability*

In addition to proving the existence of a disability, and that a plaintiff is a qualified individual, a plaintiff must also prove that the plaintiff was discriminated against based on that disability. Plaintiff claims that no reasonable jury could find that Plaintiff was not discriminated against based on Plaintiff's alleged disability. Plaintiff states that Defendant never informed Plaintiff of any problem with Plaintiff's methodology, Defendant never warned Plaintiff of any other problems in writing, and only after Plaintiff informed Defendant of Plaintiff's alleged disability, did Defendant decide to terminate Plaintiff's employment.

In response to Plaintiff's request for summary judgment, Defendant states that Plaintiff has failed to show that any evidence exists to prove that Defendant's alleged nondiscriminatory reason for terminating Plaintiff's employment was pretextual. Defendant states that Plaintiff's repeated failure to follow the methodology used and required by Defendant led to the termination of Plaintiff's employment.

When determining whether a plaintiff was discriminated against based on the plaintiff's alleged disability, the burden sifting analysis used in analyzing Title VII employment discrimination cases applies. *See Earl,* 207 F.3d at 1365. Under *McDonnell Douglas* and *Burdine* the plaintiff bears the burden of establishing a prima facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. After the plaintiff establishes a prima facie case of discrimination the burden shifts to the defendant. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Once the burden shifts to the defendant, the defendant is required to show a "legitimate nondiscriminatory reason" for the alleged discriminatory action. *See id.* The defendant is only required to produce a nondiscriminatory reason for the alleged discriminatory actions. *See id.* Defendant is not required to bear the burden of

proof. *See id.* Thus, the burden of production that shifts to the defendant, once a plaintiff has established a prima facie case of discrimination, is "exceedingly light" and easily established. *Perryman,* 698 F.2d at 1142. Once the defendant satisfies the burden of production, the plaintiff is required to prove by a preponderance of evidence that the defendant employer possessed a discriminatory intent or that the defendant's alleged nondiscriminatory reason is a mere pretext. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

Once again, as this Court has previously found, when evaluating Defendant's Dispositive Motion for Summary Judgment, a genuine issue of material fact exists as to whether Defendant's alleged non-discriminatory reason for terminating Plaintiff's employment was a mere pretext. The Court has thoroughly reviewed the record of this case and finds that sufficient evidence exists within the record to create a genuine issue of material fact. (Dkts.25, 26, 27). As such, summary judgment is not appropriate.

ii. *Timeliness*

In addition to claiming that a genuine issue of material fact exist, and, therefore, summary judgment is not appropriate, Defendant asserts that Plaintiff's Dispositive Cross–Motion for Summary Judgment should be denied as untimely. While the Court notes that Plaintiff's Dispositive Cross–Motion for Summary Judgment was filed well-outside the deadlines set by this Court, the Court has previously found that the Court would consider Plaintiff's Dispositive Cross–Motion for Summary Judgment, in the interest of justice. Accordingly, it is

**ORDERED** that Defendant, Smallwood, Reynolds, Stewart, Stewart & Associates, Inc.'s, Dispositive Motion for Summary Judgment, (Dkt.18), be **DENIED** and Plaintiff, Donald Hansen's, Dispositive Cross–Motion for Summary Judgment, (Dkt.30), be **DENIED.**